The PEOPLE of the State of
Colorado, Petitioner,

v.

Vincent Joseph SPOTO, Respondent.

No. 88SC611.

Supreme Court of Colorado,
En Banc.

July 9, 1990.

As Modified on Denial of Rehearing
Aug. 27, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender and Kathleen A. Lord, Deputy State Public Defender, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the judgment of the Colorado Court of Appeals reversing the conviction of defendant Vincent Joseph Spoto for first degree murder and a crime of violence. *See People v. Spoto,* 772 P.2d 631 (Colo.App.1988). The issue upon which review was granted is whether the district court erred in admit-

ting evidence of a prior incident involving the defendant's use of a gun to rebut the defendant's evidence of accident and lack of deliberation. The court of appeals held that the trial court erred in admitting the prior incident evidence, reversed the defendant's conviction and remanded the case for a new trial. We agree that the trial court erred in admitting the evidence and therefore affirm the judgment of the court of appeals.

I.

Spoto was tried to a jury in El Paso County District Court on charges of first degree murder,[1] conspiracy to commit first degree murder,[2] and crime of violence[3] arising out of the death of Roger Berg as a result of a gunshot wound inflicted by the defendant. The jury found the defendant not guilty of conspiracy but guilty of first degree murder and crime of violence. Spoto appealed, asserting among other things that the trial court erred in admitting evidence that he had used a gun on a prior occasion. The court of appeals reversed the conviction and we granted certiorari. To determine whether the prior transaction evidence was properly admitted, it is necessary to outline the evidence concerning the shooting of Roger Berg, the evidence concerning the earlier incident during which the defendant used a gun, and the trial court's instructions to the jury as to the limited purposes for which evidence of the prior incident could be considered.

In late November 1985, Spoto and his wife were living in a house with the defendant's friend David Bowman. On November 27, Bowman and Spoto went to the Candlelight Inn in Colorado Springs. Bowman spent some time talking with Melinda Deeringer, a dancer at the Candlelight with whom he was infatuated. The evidence indicated that Deeringer invited him to her apartment to spend the night. After leaving the Candlelight and dropping Spoto off at home, Bowman went to Deeringer's

---

**1.** § 18–3–102, 8B C.R.S. (1986).

**2.** § 18–2–201, 8B C.R.S. (1986); § 18–3–102, 8B C.R.S. (1986).

**3.** § 16–11–309, 8A C.R.S. (1986).

apartment. Deeringer's roommates admitted him and he waited for Deeringer to arrive from work.

Deeringer left the Candlelight with Roger Berg, a disc jockey at the establishment. When they got to her apartment, she told Bowman that she was spending time with Berg and that Bowman would have to leave. Bowman was upset. He left Deeringer's apartment, returned to his own residence and told Spoto what had happened. Spoto testified in his own defense and stated that after Bowman described his experience at Deeringer's, Bowman said that he wanted to go back there to pick up clothes that he had left and to find out where he stood with Deeringer. Spoto said he tried to discourage Bowman from returning but was unsuccessful. Spoto testified that he was concerned that Bowman would make a fool of himself and decided to accompany him to help keep the situation under control.

Bowman and Spoto then went to Deeringer's apartment in Bowman's vehicle, in which Spoto kept a .357 magnum pistol. According to Spoto, after they parked facing Deeringer's apartment, both got out of the truck and Spoto saw Bowman placing the gun in his pants. Concerned that Bowman was carrying the gun, Spoto persuaded him to turn it over. Spoto said that he went to put the gun back in the truck but found it locked, so he took the gun with him. Bowman and Spoto were then admitted by one of Deeringer's roommates. Bowman asked if Berg was still there and whether everyone was asleep. He was told that Berg was present and all were asleep. Bowman then entered Deeringer's bedroom and found her and Berg sleeping. He kicked the bed and told Berg to get up. While these events were transpiring, Spoto followed Bowman into the bedroom. The evidence was in conflict as to what happened next.

Deeringer gave the following account. Spoto directed Berg to get out of bed or he would kill him. Berg refused. Spoto then quickly walked to the foot of the bed on Berg's side and pulled a pistol from inside his jacket. Berg then reached for his own pistol, which was located at the head of the bed. Spoto grinned, walked forward on Berg's side of the bed, reached for the hand in which Berg was holding the gun and put his own gun to Berg's neck. Berg and Spoto struggled. Deeringer testified that "[t]heir hands just went together like this for a few minutes—not a few but a couple of seconds. And then all of a sudden, boom. [Spoto] shot Roger [Berg]."

Spoto testified to a different version of the events. He stated that Berg started to turn towards the headboard and reach for a gun that was visible there. Spoto said "David [Bowman], he's got a gun." Bowman said he didn't care. Spoto then moved to grab Berg's gun, took out his own pistol, and told Berg to "chill out." A struggle began, and Berg's pistol was pointed at Spoto. Spoto testified that he cocked his pistol in an effort to persuade Berg to calm down and told Berg to freeze. According to Spoto, his gun then fired accidentally in the course of the continuing struggle, killing Berg. Spoto denied knowing where his gun was positioned when it discharged.

The evidence was undisputed that Berg's death was caused by a bullet fired from Spoto's .357 magnum pistol when the muzzle of the gun was in contact with Berg's neck.

Bowman and Spoto fled and were thereafter located in New York and came back to Colorado to face charges resulting from Berg's death. Spoto was tried separately, and Bowman did not testify at Spoto's trial. Spoto defended on the basis that he acted in self-defense and that his pistol discharged accidentally while he was attempting to wrest Berg's pistol from him. In order to rebut the evidence of self-defense [4] and accident the prosecution sought to introduce evidence of a prior occasion during which Spoto brandished a pistol.

The prior incident occurred a few weeks earlier at Bowman's residence. At the

---

**4.** The court instructed the jury that self-defense is an affirmative defense to a charge of first

degree murder "and all lesser offenses."

time, Bowman lived with Spoto and two other persons, Brett DeWeese and Heidi Smith. Bowman and Spoto shared a bedroom, as did DeWeese and Smith. Spoto and DeWeese ultimately testified about the incident and offered somewhat different accounts. Spoto testified that he and Bowman returned home in the early morning hours and discovered the front door open and some things missing from their bedroom. Spoto and Bowman then entered the DeWeese–Smith bedroom at about 2:30 to 3:00 a.m. while DeWeese and Smith were asleep. According to Spoto, he and Bowman went into the bedroom to ask DeWeese and Smith if they had stolen the missing items. DeWeese and Smith denied the theft. Spoto testified that he then pointed an unloaded pistol at DeWeese and asked, "swear to God?" The incident ended when the parties heard noises from another part of the house and went to investigate. They discovered that a burglar was in the house and was escaping. In DeWeese's version of the events, Spoto woke him by poking him in the ribs with a gun, then pulled his left arm outward, pressed the gun to his head just below his left ear and asked him if he believed in God. DeWeese stated that he was groggy while being awakened.

The defendant first sought a pretrial ruling on the admissibility of evidence of the DeWeese incident. The district court heard the testimony of Smith and DeWeese and ruled, without elaboration, that the evidence would not be admissible. The court stated, however, that it would reconsider the ruling at the conclusion of the defendant's case in chief.

After Spoto testified and was cross-examined concerning the shooting, the prosecutor again requested permission to introduce evidence of the DeWeese incident. The court ruled:

THE COURT: Well, it's the Court's view that under the rule there are a limited number of prior transactions that are admissible. In this particular case and with the way the defendant has testified, coupled with the claim of self-defense, and the imprimatur of the gun up against the neck, we have a unique sort of act that fits some of the circumstances contemplated by the rule which would indicate intent, absence of mistake or accident. And under those circumstances, the Court is going to allow that prior transaction to be presented to the jury. So you may examine him on that particular area.

The jury was brought back in and the court instructed them as follows:

THE COURT: If you'll be seated. Ladies and gentlemen, I have a special instruction for you at this time. Certain evidence is about to be admitted for a limited purpose. You are admonished that it is not to be considered for or by you for any purpose other than the limited purpose for which it is admitted. The limited purpose for which such testimony is being admitted is to show intent, absence of mistake or accident.

Anything else, Mr. Aspinwall [the prosecutor]?

MR. ASPINWALL: Guilty knowledge and motive, Your Honor.

THE COURT: Guilty knowledge and motive.

The district attorney then cross-examined Spoto on the DeWeese incident.

In its rebuttal case, the prosecution called DeWeese to testify as to the incident. Before hearing testimony, the court instructed the jury as follows:

Ladies and gentlemen, certain evidence is about to be admitted for a limited purpose. As I instructed you earlier, this evidence is admitted, but it is admitted only for the limited purpose. The limited purpose for which such testimony is being introduced is to show guilty knowledge, intent, absence of mistake or accident. It's to be only considered for such purpose and not for any other purpose.

MR. ASPINWALL: Your Honor, I believe motive also.

THE COURT: Motive. All right.

After DeWeese testified, the court reminded the jury of the earlier limiting instruction. All of the evidence concerning the DeWeese transaction was presented over the objections of the defense.

In closing argument the prosecutor mentioned the DeWeese incident only once, when describing Bowman's actions in going to his apartment and returning to Deeringer's in the company of Spoto:

Is David Bowman upset? Yes. Does David Bowman go in there and beat up Roger? No. What does he do? He drives home. He goes home and gets his big buddy. He goes home and gets Vince. He goes home and gets Vince with the gun. You don't know what's said back there. He goes home and gets Vince with the gun, the same gun that this defendant put to the head of Brett DeWeese, put to the neck under the ear of Brett DeWeese just a couple of weeks earlier.

## II.

The sole issue for decision is the admissibility of the evidence of the DeWeese incident. The framework for resolution of this issue is provided by Article IV of the Colorado Rules of Evidence, entitled Relevancy and Its Limits. *See People v. Carlson,* 712 P.2d 1018, 1021–22 (Colo.1986).

■ Unless otherwise provided by constitution, statute or rule, all relevant evidence is admissible. CRE 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. A further limitation on admissibility of relevant evidence of particular importance to the present case is found in CRE 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In other words, evidence of other crimes, wrongs or acts is inadmissible if the logical relevance of the proffered evidence depends upon an inference that a person who has engaged in such misconduct has a bad character and the further inference that the defendant therefore engaged in the wrongful conduct at issue. E. Imwinkelreid, *Uncharged Misconduct Evidence* § 2.18 (1984) (hereinafter Imwinkelreid).

■ Read together, these rules require a four-part analysis to determine whether evidence of prior acts is admissible. First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact "that is of consequence to the determination of the action." CRE 401; *Carlson,* 712 P.2d at 1021. If it does, we proceed to the second question: is the evidence logically relevant, i.e., does it have "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?" CRE 401; *Carlson,* 712 P.2d at 1021. If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. *See* CRE 404(b); Imwinkelreid § 2.18. Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. CRE 403; *Carlson,* 712 P.2d at 1022.

■ In the present case, the central issue is Spoto's intent as it bears on the issues of premeditation, self-defense and accident. His intent is undeniably a material fact and the evidence of the DeWeese incident was offered as relating to that material fact. The evidence therefore meets the first requirement for admissibility.

We next must determine whether the DeWeese evidence is logically relevant,

that is, whether it has any tendency to make the existence of criminal intent more or less probable. The parties do not dispute that Spoto intentionally brought the gun into Deeringer's bedroom and intentionally pulled out the gun. At issue is (1) whether Spoto entered the bedroom with a premeditated plan to kill Berg, (2) whether Spoto pulled out the gun in self-defense, and (3) whether Spoto intentionally pulled the trigger. Evidence of the DeWeese incident is logically relevant to the material issue of intent. At minimum, the incident suggests that Spoto is the type of person who would pull a gun on someone when it is not necessary for self-defense.

■■■ The more difficult question is whether the DeWeese incident is logically relevant independent of the inference, which is prohibited by CRE 404(b), that it demonstrates Spoto's character as a person who draws guns on people intentionally and that such character in turn suggests that he intentionally shot Berg. To be admissible, the prosecution must articulate a precise evidential hypothesis by which a material fact can be permissibly inferred from the prior act independent of the use forbidden by CRE 404(b). *See United States v. Hogue*, 827 F.2d 660, 662 (10th Cir.1987).

Spoto testified at trial that he and Berg struggled and the gun accidentally went off. The prosecution argues that the DeWeese incident has some tendency to support the prosecution's theory that Spoto intentionally put the gun to Berg's neck and intentionally pulled the trigger. The prosecution suggests two ways in which the incident supports its theory independent of the inferences that Spoto has a bad character and acted in conformity with that character in shooting Berg. First, the prosecution contends that the DeWeese incident demonstrates Spoto's ability to handle his gun and use a "martial maneuver" to put the gun against his victim's neck before firing. Evidence of the DeWeese incident, therefore, makes the defense of accidental firing appear less plausible. The

DeWeese incident, however, does not demonstrate any ability on Spoto's part to perform complex martial arts maneuvers. It shows only that Spoto is capable of putting a gun against the head of a man who is just awakening. Nor is there any suggestion in the evidence that Spoto employed a martial arts maneuver in his struggle with Berg. Furthermore, the DeWeese incident does not suggest that when Spoto draws a gun he intends to use it. To the contrary, Spoto pointed an unloaded gun at DeWeese and did not pull the trigger.

■■■ The prosecution's second argument that the DeWeese incident has logical relevance independent of the purpose forbidden by CRE 404(b) is that the DeWeese incident demonstrates that Spoto's claim that the shooting of Berg was an accident is unlikely. The prosecution relies on the doctrine of chances. An example illustrates the operation of this doctrine.

> [S]uppose that the defendant is charged with murdering his wife. The wife was found dead in her bath tub. The defendant claims that she accidentally drowned while bathing. In this situation, there is both English and American case law admitting evidence of similar deaths of the defendant's previous wives. The courts reason that the credibility of the accident theory decreases as the number of similar incidents increases. The intermediate inference ... is objective or statistical unlikelihood under the doctrine of chances rather than the defendant's subjective character.

Imwinkelried, § 4:01. Under this theory, if Spoto had killed several people by shooting them in the neck and claimed in each case that it was an accident, evidence of those prior acts would tend to show the unlikelihood of another similar accident. In this case, however, application of the doctrine of chances is inappropriate for two reasons. First, the DeWeese incident is not similar enough to the current case to make the objective statistical inference. DeWeese was not shot[5] and Spoto did not claim that

---

5. The prosecution cites *United States v. Hillsberg*, 812 F.2d 328 (7th Cir.), *cert. denied*, 481

U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987), in which the defendant pointed a gun at the

he accidentally placed his gun to DeWeese's head. Although, according to DeWeese, Spoto pulled DeWeese's left arm while putting a gun to his head, DeWeese was in the process of being awakened rather than engaged in a struggle with Spoto at the time. Dissimilar prior acts are not probative under the doctrine of chances. "Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance." A.J. Wigmore, *Evidence* § 302 (1979) (hereinafter Wigmore). Although the prosecution correctly notes that there is generally no similarity of conduct requirement concerning evidence of other crimes, wrongs or acts offered for permissible purposes such as proof of intent, preparation, plan or accident under CRE 404(b), *see United States v. Longoria*, 624 F.2d 66, 69 (9th Cir.), *cert. denied*, 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980), similarity is crucial when the theory of logical relevance is the doctrine of chances.

Second, there is only one prior incident in this case. The greater the number of instances, the less likely it is that they are accidental. Wigmore § 302. Because the prosecution points to only one prior instance, the evidence for this reason alone has little probative value. The small probative value does not by itself make the evidence inadmissible, but when combined with the lack of similarity of the two incidents we conclude that the DeWeese incident cannot qualify for admissibility as logically relevant, independent of its relevance for the forbidden purpose of showing bad character, under the doctrine of chances.

■ Finally, even if the DeWeese incident could be considered admissible for some narrow purpose, we must consider whether whatever probative value, if any, survives the limitation of our previous analysis is substantially outweighed by the danger of unfair prejudice under CRE 403. In *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), we recognized the potential for prejudice resulting from prior bad act evidence. We wrote:

> Bearing in mind that evidence of similar acts has inhering in it damning innuendo likely to beget prejudice in the minds of jurors, and that such evidence tends to inject collateral issues into a criminal case which are not unlikely to confuse and lead astray the jury, it becomes exigent that courts observe the fine balance in regard to such evidence that must exist between the necessity of proof on the part of the prosecutor and the danger of unfair prejudice to the defendant.

*Id.* at 284, 344 P.2d at 458.

The facts in this case were disputed. The defendant told a seemingly plausible story. Whether the jury believed Spoto's account of the incident was critical to the outcome of the case. When the jury heard a housemate testify that Spoto had previously drawn a gun on him, used it to awaken him by poking the gun in his ribs, and asked him, "[d]o you believe in God?," the jury was presented with a picture of Spoto as the kind of person who is prone to point guns and make threats.[6] It cast doubt on Spoto's presentation of himself as a person who accompanied a distraught friend to help prevent the friend from doing something foolish and found himself unable to control a dispute between the friend and another man. In sum, it presented the grave danger that it would be employed by the jury to infer bad character and action taken in conformity with

victim but claimed that he did not intend for it to go off. The trial court then admitted evidence of two prior instances on the same day the victim was shot in which the defendant pointed a gun and fired it. The court reasoned that the prior instances demonstrated that the defendant was capable of controlling the weapon and that it tended to prove that the defendant intentionally shot the victim. Unlike the defendant in *Hillsberg*, Spoto does not claim that the gun accidentally went off while he was intentionally holding it at Berg's neck. Rather, Spoto claims that it went off during a struggle between him and Berg.

**6.** Scarcely less prejudicial was Spoto's own version of the incident that he pointed the gun at DeWeese while interrogating him about some missing articles and asked DeWeese if he swore to God.

bad character. The potential for prejudice in this case was overwhelming.

The trial court did not reduce the probability of prejudice by carefully instructing the jury. Instead, the court instructed the jury generally before Spoto's own testimony about the incident was received that "You are admonished that [this evidence] is not to be considered for or by you for any purpose other than the limited purpose for which it is admitted. The limited purpose for which such testimony is being admitted is to show intent, absence of mistake or accident.... Guilty knowledge and motive." A similar instruction preceded DeWeese's testimony. The evidence of the DeWeese incident had no relevance to guilty knowledge or motive. In the absence of a focus on a particular purpose for which the testimony might arguably be relevant, the Court's instruction did nothing to alleviate the risk that the jury would use the testimony for the prohibited purpose of inferring that Spoto has a bad character and acted in conformity therewith in shooting Berg. The prosecution also brought the incident to the jury's attention, if only briefly, in closing argument in a way that suggested use of the evidence of the DeWeese incident to prove that Spoto was the kind of person who would commit the acts charged. We conclude, therefore, that the unfair prejudicial effect of this evidence substantially outweighed any probative value it may have had for purposes permitted by CRE 404(b).

Accordingly, we affirm the judgment of the court of appeals.

VOLLACK, J., dissents, and ROVIRA, C.J., and KIRSHBAUM, J., join in the dissent.

## Justice VOLLACK dissenting:

I respectfully dissent from the majority's holding that the district court erred in admitting evidence of a prior incident involving the defendant's use of a handgun. I would reverse the judgment of the court of appeals and hold that the district court did not abuse its discretion in admitting the prior-incident evidence.

As the majority notes, the framework for resolving the issue of whether evidence of prior incidents is admissible is provided by article IV of the Colorado Rules of Evidence. Maj. op. at 1318. "Unless otherwise provided by constitution, statute or rule, all relevant evidence is admissible." Maj. op. at 1318; CRE 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. CRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The trial judge must weigh ... the bearing of the other transaction on the issues presented at the trial of the offense charged, and the degree to which the jury would be prejudiced by the other transaction. Because of these varying considerations, the trial judge is allowed substantial discretion when he decides regarding the admissibility of such evidence." *People v. Ihme,* 187 Colo. 48, 51, 528 P.2d 380, 381–82 (1974).

Prior to the trial the defendant filed a motion requesting that the court hold a pretrial hearing to determine the admissibility of evidence of a prior incident involving the defendant and his former housemate Brett DeWeese. The parties agreed that the prosecution would not refer to the prior incident in its case in chief. During the prosecution's case in chief, El Paso County Coroner David Bowerman testified that the bullet that killed John Berg entered the back of Berg's neck to the right of the nape of his neck, traversed through his neck from back to front and right to left in a horizontal plane, and exited on the left side of Berg's neck at the level of the shoulder. The coroner also testified that when the bullet was fired the muzzle of the gun was in contact with the surface of Berg's skin.

Melinda Deeringer gave her account of Berg's death during the prosecution's case in chief. Deeringer testified that the defendant entered the room and told Berg to get out of bed or he was going to kill him. Deeringer testified that the defendant then quickly walked around to the foot of Berg's side of the bed and pulled a gun from his jacket. Berg then reached for his gun, which was on the headboard of the bed. Deeringer testified that the defendant then reached for the hand in which Berg held his gun and put his gun in Berg's neck. According to Deeringer, the defendant's and Berg's hands "just went together like this for a few minutes—not a few but a couple of seconds. And then all of a sudden boom. He shot Roger [Berg]."

The defendant's account of Berg's death contradicted Deeringer's testimony. The defendant testified that when David Bowman kicked the bed in which Berg and Melinda Deeringer were sleeping, and told Berg to get up,[1] Berg reached up and grabbed a gun from the headboard of the bed. He, the defendant, then grabbed Berg's gun, drew his own gun, and told Berg to "chill out." He then cocked his gun and told Berg to freeze. The defendant then testified that Berg "was pulling; I was kind of ducking, squatting at the same time—and he was pulling and turning and my gun fired."

After he had cross-examined the defendant on other subjects, the district attorney asked the court for permission to cross-examine the defendant about the incident involving Brett DeWeese. The court held a hearing out of the jury's presence, and ruled that evidence about the DeWeese incident was admissible. When the jury returned to the courtroom, the court instructed the members of the jury that the evidence they were about to hear was being admitted for the limited purpose of showing intent, absence of mistake or accident, and that they should not consider the evidence for any other purpose. The district attorney then cross-examined the defendant about the DeWeese incident in an attempt to discredit the defendant's version of Berg's death. The defendant testified on cross-examination that after coming home early one morning he discovered that someone had been in his bedroom. The defendant admitted that he then got his gun and went to DeWeese's bedroom. The district attorney asked the defendant if he had awakened DeWeese by poking him in the ribs with his gun, and if he had pulled DeWeese's arm over and put the gun up against DeWeese's neck. The defendant answered that he had not.

In rebuttal, the prosecution called Brett DeWeese, who testified about the prior incident with the defendant. DeWeese testified that when he and the defendant were living in the same house, the defendant entered his room at about 3:00 one morning and woke him up by poking him in the ribs with his gun. DeWeese testified that the defendant then pulled his left arm outward, put the gun to his head just below his left ear, and asked him if he believed in God. After DeWeese's rebuttal testimony, the district court again instructed the jury that the evidence it had just heard was being admitted for the limited purposes previously indicated by the court.

The evidence of the DeWeese incident was logically relevant, independent of the inference prohibited by CRE 404(b) that the defendant acted in conformity with his bad character. The DeWeese incident was admissible to show that the defendant drew his gun first, that the defendant did not accidentally place this gun to Berg's neck, and that the gun did not accidentally discharge. Courts have admitted evidence of similar acts, as rebuttal to the witness's testimony or impeachment of his credibility, to show that the present act was not an accident. *Young v. Rabideau*, 821 F.2d 373, 380 (7th Cir.), *cert. denied*, 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987). In *United States v. Hillsberg*, 812 F.2d 328, 334 (7th Cir.), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987), the Seventh Circuit held that the trial court properly admitted evidence that earlier in

---

1. The defendant testified that Bowman's exact statement was: "You've got three seconds to put your pants on or we'll put your pants on for you."

the day on which he shot the victim, the defendant had taken his gun out and fired it into the air. The court held that the evidence that the defendant had earlier fired his gun was admissible to rebut the defendant's claim that his gun discharged accidentally when the victim was shot. *Id. Hillsberg* is not distinguishable on the ground that the defendant did not fire his gun when he threatened DeWeese. Evidence of the DeWeese incident was properly admitted to show that the defendant was proficient in drawing his handgun, pulling an individual's arm away from his body, and placing the gun on the individual's neck. The DeWeese evidence was properly admitted to demonstrate that the defendant's actions caused Berg's death and were not accidental. *Id.; see also Rabideau,* 821 F.2d at 380 (evidence of an inmate's prior misconduct admissible to rebut inmate's assertion that he grabbed a chain out of a prison guard's hand accidentally, or by reflex); *Adkinson v. State,* 611 P.2d 528, 532 & n. 11 (Alaska) (evidence that defendant had on previous occasions pointed his shotgun at trespassers was admissible to prove that the defendant did not accidentally point his shotgun at the victim), *cert. denied,* 449 U.S. 876, 101 S.Ct. 219, 66 L.Ed.2d 97 (1980).

Evidence of the DeWeese incident was also admissible to show that the defendant acted intentionally in entering the room with a gun, drawing his gun first, and forcibly placing it up against Berg's neck.[2] Evidence of other acts is admissible to establish specific intent when intent is an essential element of the crime charged and when the other requirements of Rules 404(b) and 403 are satisfied. *Rabideau,* 821 F.2d at 379. "The 'intent' exception to Rule 404(b) may also be used, in a broader sense, to admit prior crimes 'because the repetition of the crime is itself circumstantial proof of intent, not direct proof of a propensity to commit crime.'" *Id.* (quoting *United States v. Fountain,* 768 F.2d 790, 805 (7th Cir.1985) (Swygert, J., concurring in part and dissenting in part), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986)). In this case evidence of the DeWeese incident was admissible as circumstantial evidence that the defendant entered Berg's bedroom with the intent to place his gun up against Berg's neck and shoot him. *Rabideau,* 821 F.2d at 379–80; *Hillsberg,* 812 F.2d at 334 (evidence that earlier in the day the defendant fired his gun into the air "was germane in determining his state of mind at the time of the fatal shooting"); *United States v. Tsinnijinnie,* 601 F.2d 1035, 1040 (9th Cir.1979) (evidence of prior altercation was admissible to show that defendant intentionally ran over the victim with a truck), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980); *United States v. Brunson,* 549 F.2d 348, 361 (5th Cir.) (evidence that the defendant earlier helped third party rob a market admissible to rebut defendant's claim of unknowing state of mind when third party robbed and murdered postmistress in his presence), *cert. denied,* 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977). The fact that in the prior incident the defendant did not fire his gun bears on the weight of the evidence rather than its admissibility. The danger that the jury might misuse the evidence of the DeWeese incident was eliminated by the district court's contemporaneous limiting instructions. *See Callis v. People,* 692 P.2d 1045, 1051 (Colo.1984); *Stull v. People,* 140 Colo. 278, 284–85, 344 P.2d 455, 461–62 (1959).

The remaining issue is whether the trial court should have excluded evidence of the DeWeese incident under CRE 403. "The thrust of Rule 403 favors admissibility," *People v. District Court,* 785 P.2d 141, 146 (Colo.1990), "and Rule 403 requires that the

---

**2.** The defendant disputed each of these claims. On direct examination the defendant testified that he initially intended to leave the gun in Bowman's truck, but decided to carry it into the apartment so that "David [Bowman] couldn't get back to it in any way." The defendant also testified that when he entered Deeringer's bedroom he did not intend to harm anyone, and that he did not draw his gun until he saw Berg reaching for the gun on the headboard. Finally, the defendant testified that when he grabbed Berg's arm he was trying to calm Berg down and defuse the situation, and his gun accidentally discharged as a result of his struggle with Berg.

**1324**

probative value of evidence in question be 'substantially outweighed' by the danger of unfair prejudice." *Id.* " '[T]he need for exclusion must be clear since exclusion is a drastic remedy and less restrictive measures, such as cautionary instructions to the jury, may suffice to reduce the danger of prejudice to an acceptable level.' " *Id.* (quoting J. Wigmore & P. Tillers, *Wigmore on Evidence* § 10A, at 680 (1983)). "Proffered evidence which calls for exclusion as unfairly prejudicial is given a more specialized meaning of an undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution or horror." *Id.* The probative value of the district attorney's cross-examination of the defendant about the DeWeese incident, and DeWeese's rebuttal testimony, was not substantially outweighed by the danger of unfair prejudice. The evidence of the DeWeese incident was probative of a material fact, and rendered the defendant's version of events less believable in a case which largely turned on the defendant's and Deeringer's credibility. *Accord Adkinson,* 611 P.2d at 532.

I dissent.

I am authorized to say that Chief Justice ROVIRA and Justice KIRSHBAUM join in this dissent.

