The PEOPLE of the State of
Colorado, Petitioner,

v.

Caesar NUANEZ, Respondent.

No. 97SC922.

Supreme Court of Colorado,
En Banc.

Feb. 16, 1999.

Rehearing Denied March 15, 1999.

Ken Salazar, Attorney General, Barbara
McDonnell, Chief Deputy Attorney General,
Michael E. McLachlan, Solicitor General,
Clemmie P. Engle, Senior Assistant Attorney
General, Criminal Enforcement Section, Den-
ver, Colorado, Attorneys for Petitioner.

David F. Vela, Colorado State Public De-
fender, Ann M. Roan, Deputy State Public
Defender, Denver, Colorado, Attorneys for
Respondent.

Justice RICE delivered the Opinion of the
Court.

A jury found the defendant, Caesar Nua-
nez, guilty of one count of second-degree
assault arising out of an altercation with a
police officer during the course of a traffic
stop. The court of appeals subsequently re-
versed Nuanez's conviction, holding that the
trial court erred in admitting evidence that
Nuanez was subject to the terms and condi-

tions of a deferred sentence for burglary at the time of the assault. *See People v. Nuanez*, No. 96CA0188, slip op. at 5 (Colo.App. Oct. 9, 1997) (not selected for publication). Thereafter, the prosecution brought this appeal. We hold that the trial court's admission of the evidence in question was proper. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of conviction and sentence.

## I.

On July 24, 1994, Denver Police Detective David Marker stopped Nuanez after witnessing him drive through a red light. According to the prosecution's evidence, when Detective Marker requested to see Nuanez's driver's license, registration, and proof of insurance, Nuanez attempted to flee on foot from the scene. Marker then grabbed Nuanez's arm and a struggle ensued, during which Nuanez threw the detective to the ground. As a result, Marker suffered a large laceration to the back of his head and lost consciousness for a short period of time. Meanwhile, several more police officers arrived on the scene. Nuanez and his brother, who had been a passenger in the vehicle, struggled with the officers in an attempt to escape. Both Nuanez and his brother were ultimately subdued and arrested. As a result of the altercation, Nuanez suffered multiple injuries, including a broken arm. Nuanez was charged with one count of second-degree assault for attacking Detective Marker.[1]

At trial, the defense argued that Nuanez was the victim of a police beating. The defense offered the testimony of Nuanez's brother, who claimed that Nuanez did not resist arrest and that Marker and the other officers assaulted Nuanez without justification. The defense argued that Marker's head injury occurred as the result of another police officer striking him or throwing him to the ground during the melee.

In an effort to rebut the defendant's version of events, the prosecution attempted to show that Nuanez had a compelling motive for assaulting Detective Marker. The prosecution's theory was based on the following key facts: (1) on the night in question, Nuanez was driving without a license, as his had been revoked sixteen months earlier due to a habitual traffic offender conviction; and (2) at the time of the stop, Nuanez was subject to the terms and conditions of a deferred judgment and sentence for a 1993 second-degree burglary charge. Based on these facts, the prosecution first asserted that, as Nuanez was driving without a license at the time of the stop, he was aware that he would be subject to further prosecution as a habitual traffic offender. Second, the prosecution argued that Nuanez knew that such a criminal conviction would violate the terms and conditions of his burglary deferred judgment, which would result in an entry of sentence against him in that prior case. Therefore, the prosecution concluded that Nuanez had a strong motive for attempting to flee from Detective Marker at the time of the traffic stop.

In support of its theory, the prosecution introduced certified copies of Nuanez's driving record into evidence. The defense did not object to the introduction of the driving record. Nuanez's driving record included a March 17, 1993 order revoking his driving privileges for a period of three years. This revocation was issued because Nuanez had committed a sufficient number of traffic violations in the preceding five years to be considered a habitual traffic offender. Nuanez's driving record did not include any information explaining the legal ramifications of driving with a revoked license. However, in both its opening and closing arguments, the prosecution alluded to the fact that driving while under a habitual traffic offender license revocation is a crime.[2]

Over objection, the prosecution also introduced Exhibit 13, a copy of a Stipulation for Deferred Judgment dated April 19, 1993.

---

1. *See* § 18–3–203(1)(c), 6 C.R.S. (1998).

2. During opening argument, the prosecutor stated that Nuanez knew "it was going to be another trip to court" if he was caught driving after his

license had been revoked. In closing, the prosecutor argued that driving under a revoked license is "a crime, and it violates this felony Deferred Judgment."

This stipulation provided that the entry of judgment and sentence on Nuanez's guilty plea to second-degree burglary would be deferred for a period of four years. It further provided that Nuanez was permitted to remain at liberty during the period of deferral on the condition that he not "commit any criminal offense against the United States of America, the State of Colorado or any other jurisdiction." The prosecution offered no other evidence at trial to prove Nuanez's motive.

As noted, Nuanez did not object to the introduction of his driving record into evidence. However, defense counsel did object to the admission of the second-degree burglary deferred judgment on the grounds that it constituted impermissible character evidence. After conducting a hearing on the issue out of the presence of the jury, the trial court applied the four-part test for prior act evidence we announced in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990), and held that the deferred judgment evidence was admissible. The court instructed the jury that it was not to consider the evidence of Nuanez's driving record and the conditions of the deferred judgment for any purpose beyond the limited purpose of showing Nuanez's alleged motive for the assault. The jury found the defendant guilty of second-degree assault.

Nuanez appealed his conviction, claiming that his constitutional right to a fair trial was violated by the admission of the evidence of his deferred judgment. The court of appeals reversed the judgment of conviction. *See Nuanez*, No. 96CA0188, slip op. at 5. Therein, the court of appeals found that the record contained "ample evidence" of motive apart from the deferred judgment. *Id.* at 4. Specifically, the court stated that "[d]efendant's status as [a] habitual traffic offender also subjected him to incarceration … and was thus equally probative of motive." *Id.* Therefore, the court held, "the probative value of defendant's deferred judgment for a prior burglary conviction is substantially outweighed by the danger of unfair prejudice." *Id.* The court of appeals concluded that the trial court had abused its discretion in holding to the contrary and in allowing the additional evidence of the deferred judgment. *See id.*

## II.

Under CRE 402, all relevant evidence is admissible unless otherwise provided by the Colorado or United States Constitutions, the Colorado Rules of Evidence, or the Colorado statutes. In *Spoto*, we held that the Colorado Rules of Evidence require a four-part analysis to determine whether evidence of prior acts is admissible. See *Spoto*, 795 P.2d at 1314. Therein, we held as follows:

First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact "that is of consequence to the determination of the action." If it does, we proceed to the second question: is the evidence logically relevant, i.e., does it have "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?" If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*Id.* at 1318 (citations omitted). As the court of appeals opinion is based on the fourth prong of this test, and Nuanez only challenges the trial court's application of the fourth prong, we limit our review accordingly.

The fourth prong of the *Spoto* test is the embodiment of CRE 403, which reads as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence.

It is well established that trial courts are given broad discretion in balancing the probative value of the evidence in question against the danger of unfair prejudice. *See People v. Gibbens,* 905 P.2d 604, 607 (Colo. 1995); *People v. Willner,* 879 P.2d 19, 26 (Colo.1994); *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993). As we have stated on many occasions, "[a]bsent an abuse of discretion, a trial court's ruling concerning the relative probative value and prejudicial impact of the evidence will not be disturbed on review." *Gibbens,* 905 P.2d at 607. To demonstrate an abuse of discretion, the petitioner must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *See People v. Snyder,* 874 P.2d 1076, 1080 (Colo. 1994); *King v. People,* 785 P.2d 596, 603 (Colo.1990). In reviewing the trial court's decision, we must also assume the maximum probative value a reasonable fact finder might give to Nuanez's burglary deferred judgment, and the minimum unfair prejudice to be reasonably expected from its introduction. *See Gibbens,* 905 P.2d at 608.

■ With these principles in mind, we turn to the facts of the instant case. While it is true that prior act evidence that is duplicative of other prosecution evidence carries very little probative weight in the CRE 403 balancing test, the evidence of Nuanez's deferred judgment is not merely cumulative of his habitual traffic offender violation. Instead, the evidence of the deferred judgment carries incremental probative value. Simply stated, the deferred judgment lent additional probative value to the prosecution's case because it substantially increased the stakes for Nuanez on the night in question. The deferred judgment evidence is incrementally probative because it demonstrates that Nuanez had the incentive to flee from the police not only to avoid conviction and sentencing

as a habitual traffic offender, but also to evade sentencing for second-degree burglary.

Furthermore, the evidence of the deferred judgment is qualitatively different from the evidence of the traffic offense. Although driving in violation of a habitual traffic offender revocation is a felony offense, a layperson without any information to this effect could easily believe it to be a mere misdemeanor traffic offense.[3] This risk was present in the instant case because the jury heard no direct evidence regarding the nature of the penalty for driving after a habitual traffic offender revocation. In fact, although both are felonies, the penalty imposed for second-degree burglary is substantially more severe than that imposed for driving in violation of a habitual traffic offender revocation.[4] In the instant case, the evidentiary mandate to guard against unfair prejudice did not require the trial court to exclude particularly compelling and probative motive evidence in favor of a significantly less probative prior criminal offense. Accordingly, we conclude that the court of appeals erred in holding that the deferred judgment evidence was merely cumulative.

■ Moreover, "unfair prejudice," as it is used in CRE 403, refers to an undue tendency on the part of admissible evidence to suggest to the jury an improper basis for its decision. *See People v. District Court of El Paso County,* 869 P.2d 1281, 1286 (Colo.1994). Therefore, we must review the evidence of the deferred judgment in the context of the entire record in order to determine whether it adversely affected the defendant's position by injecting considerations which were extraneous to the merits of the lawsuit, such as the jury's bias, sympathy, anger, or shock. *See id.*

Significantly, Nuanez's deferred judgment played a minor role in the prosecution's case-in-chief. In fact, the prosecution offered the signed Stipulation to Deferred Judgment as

---

3. At trial, the prosecutor, the defense attorney, and the court were all under the mistaken impression that Nuanez's violation of his habitual traffic offender license revocation was a misdemeanor offense.

4. Second-degree burglary is a Class 4 felony with a presumptive maximum sentence of six years in

prison. *See* §§ 18-1-105, 6 C.R.S. (1998), 18-4-203, 6 C.R.S. (1998). Driving in violation of a habitual traffic offender license revocation is a Class 6 felony, which carries with it a much less severe presumptive maximum sentence of 18 months. *See* §§ 18-1-105, 6 C.R.S. (1998), 42-2-206, 11 C.R.S. (1998).

an exhibit, but did not offer any witness testimony regarding the document's import. Cf. *United States v. Palmer*, 37 F.3d 1080, 1084 (5th Cir.1994) (upholding admission of parole supervisor's testimony that she had advised defendant that commission of a crime would operate to revoke his parole as evidence of motive, even though defendant had already stipulated to the fact that he was on parole for a prior conviction).

Similarly, the prosecution mentioned the deferred judgment only briefly in its opening and closing arguments. Moreover, none of the facts or circumstances surrounding the prior charge for second-degree burglary were admitted into evidence. Therefore, there is little risk that the prior act evidence could have formed an improper basis for the jury's decision.

Finally, the trial court limited the potential for unfair prejudice by instructing the jury that the deferred judgment could only be considered for the limited purpose of motive. The prosecution reiterated this limiting instruction during its closing argument. Accordingly, we find that the trial court acted within the bounds of its discretion.

### III.

We conclude that the trial court did not abuse its discretion in admitting evidence of the defendant's deferred judgment for burglary. Accordingly, we reverse the decision of the court of appeals and remand to that court with directions to reinstate the judgment of conviction and sentence.