22CA1963 Peo v Chavez 04-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1963
City and County of Denver District Court No. 21CR2064
Honorable Edward D. Bronfin, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tlaloc R. Chavez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Grove and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Phoebe W. Dee, Alternate Defense Counsel, Basalt, Colorado, for Defendant-Appellant

¶ 1     Defendant, Tlaloc R. Chavez, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of first degree murder (extreme indifference), two counts of second degree murder, attempted first degree murder (extreme indifference), and attempted second degree murder.  We affirm.

## I.     Background

¶ 2     Chavez was riding in a car with his friend, Elias Chavez (no relation), when De'Angelo Tafoya and Miguel Nunez-Figueroa (Nunez) approached the car on foot.  Elias[1] was the driver and was waiting to exit a parking lot and drive onto the main road.  Chavez was sitting in the back seat on the passenger side.  Tafoya and Nunez were standing at a nearby bus stop, wearing red clothing.  When Tafoya and Nunez began to approach the car, Elias and Chavez opened fire in their direction, striking and killing Tafoya and David Lara, a bystander who was sitting nearby.  Nunez escaped unharmed.

---

[1] To avoid confusion because he shares a last name with Chavez, we refer to Elias Chavez by his first name in this opinion.  We mean no disrespect by this designation.

¶ 3     The prosecution charged Chavez with two counts of first degree murder (extreme indifference), two counts of first degree murder (after deliberation), attempted first degree murder (extreme indifference), attempted first degree murder (after deliberation), and two crime of violence counts. It charged Elias with the same, and their cases were consolidated.

¶ 4     At trial, both Chavez and Elias claimed self-defense. Chavez testified that before he and Elias opened fire, Tafoya and Nunez were making hand gestures in their direction, they looked at each other as if to say, "let's go get these guys," and Tafoya reached behind his back as they were approaching the car.

¶ 5     The jury found Chavez guilty of both counts of first degree murder (extreme indifference), two counts of the lesser included offense of second degree murder (deadly physical force), attempted first degree murder (extreme indifference), and the lesser included offense of attempted second degree murder (deadly physical force). It found him not guilty of attempted or completed first degree murder (after deliberation). The trial court merged the murder convictions and sentenced Chavez to two consecutive life sentences,

plus forty-eight years in prison for attempted first degree extreme indifference murder.

¶ 6 Chavez appeals, arguing the self-defense jury instructions were fatally flawed in multiple respects and the trial court improperly admitted evidence of his and Elias's gang affiliation. He also asserts cumulative error. We disagree with these arguments and affirm.

## II. Gang Affiliation Evidence

¶ 7 Because it informs our analysis of subsequent issues, we address the admission of gang affiliation evidence first. Chavez argues the trial court erred by admitting evidence suggesting that he and Elias were affiliated with a gang — an error he asserts followed from prosecutorial misconduct during opening statements. We conclude no prosecutorial misconduct occurred, and the gang-related evidence was otherwise admissible.

### A. Prosecutorial Misconduct

¶ 8 The prosecutor began opening statements by repeatedly telling the jury that the shooting in this case occurred "because there were two guys at a bus stop with red clothes on." Although Chavez did not object, he argues these comments were obviously improper

because the prosecutor (1) ignored the trial court's order precluding such statements and (2) had no evidence that Chavez or Elias were gang-affiliated or were otherwise rivals with the Bloods (Tafoya and Nunez's gang).

¶ 9　　To be sure, prosecutors may not violate court orders or expose the jury to inadmissible, prejudicial evidence. *People v. Adams*, 708 P.2d 813, 814 (Colo. App. 1985). But the record does not support Chavez's assertion that the trial court "ruled neither party could raise the issue of gangs or associated colors in opening statements." Quite the opposite, the trial court *denied* Chavez's pretrial motion to exclude evidence that he or Elias were gang-affiliated based on defense counsel's express intent to admit evidence of Tafoya's and Nunez's gang affiliation. The court ruled that if the defense intended to "attribute significance" to the color of Tafoya's and Nunez's clothing, the prosecution could introduce similar evidence of Chavez's and Elias's gang affiliation. In response, defense counsel said that "it's no secret, we do intend to elicit that information" and that he intended to do so in opening statement. Defense counsel further told the court and prosecutor that "there is evidence that will come out in this case that indicates that [Tafoya

and Nunez] were participating in gang activity just prior to the shooting."

¶ 10    We recognize that the prosecutor's opening statement came first, so the jury heard that Tafoya and Nunez were wearing red before the defense had an opportunity to make good on its promise to present this evidence.  But considering the trial court's ruling and the discussion that immediately preceded opening statements, the prosecutor's statements were not improper.  They were certainly not so "flagrant or glaringly or tremendously improper" as to constitute plain error.  *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).

## B.    Admission of Gang Evidence

¶ 11    Chavez next argues the court erred by admitting evidence of his and Elias's gang affiliation.  Reviewing the court's evidentiary rulings for an abuse of discretion, *see People v. Glover*, 2015 COA 16, ¶ 10, we disagree.

### 1.    "Offer of Proof" Arguments

¶ 12    Chavez frames several of his challenges to the gang-related evidence as pertaining to the prosecutor's failure to make an adequate "offer of proof."  "An offer of proof apprises the court of the

5

nature and substance of proposed evidence." People in Interest of A.R., 2018 COA 177, ¶ 90, aff'd, 2020 CO 10. Here, there was no question that the prosecution sought to admit evidence that Chavez was a member of the Gallant Knights Insane (GKI) gang, whose color is purple. Because the parties knew what evidence the prosecution sought to admit, no further offer of proof was made or required. While we conclude Chavez's framing of his arguments is misguided, we address the substance of his claims, which more accurately relate to authentication; CRE 401, 403, and 404(b); and notice.

## 2. Authentication

¶ 13 Chavez first argues the court erred by allowing the prosecution to ask him about his gang affiliation because its questions were based on unauthenticated Facebook photographs. He argues there was no testimony authenticating where the photographs came from, who posted them, whether they were real, or who provided them to the prosecution.

¶ 14 Authentication is a condition precedent to the admission of evidence. CRE 901(a). The condition is satisfied by "evidence

sufficient to support a finding that the matter in question is what its proponent claims." *Id.*

¶ 15 Before the court permitted the prosecution to ask Chavez about his gang affiliation, it presented Chavez with photographs showing him making hand gestures and wearing purple. Chavez affirmed that the photographs depicted him. Although the prosecution did not present additional evidence to authenticate the source of the photographs (i.e., Facebook), Chavez's testimony was sufficient to meet the "minimal" standard required to authenticate the photographs generally. *See Gonzales v. People*, 2020 CO 71, ¶ 42. Therefore, there was no authentication error.

### 3. CRE 401, 403, and 404(b)

¶ 16 Chavez also argues that the photographs presented by the prosecution were irrelevant because there was no testimony indicating the significance of GKI's color or hand gestures or establishing animosity between GKI and the Bloods. He argues that without this evidence, the jury could only speculate as to the significance of the photographs, violating CRE 401 and CRE 404(b). Likewise, he argues the trial court's evidentiary rulings violated CRE 401, 403, and 404(b) because they assumed that just because

he was in a gang, and Tafoya and Nunez were in a different gang, he was "out for blood."

¶ 17    Evidence is relevant if it tends to make the existence of any consequential fact more or less probable than it would be without the evidence. CRE 401. Unless otherwise prohibited, all relevant evidence is admissible. CRE 402. Relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or if it is used to prove a person's character to show that he acted in conformity with that character on a particular occasion. CRE 403; CRE 404(b).

¶ 18    We note that while the prosecution showed Chavez several photographs before asking him about his gang affiliation, only one photograph — showing Chavez wearing purple and using hand gestures with another individual — was admitted into evidence. We conclude this photograph (and Chavez's subsequent testimony) was relevant because it made it more probable that Chavez was a member of GKI. That Chavez was a member of a different gang from Tafoya and Nunez was relevant to prove his motive to shoot them because it made it more probable that Chavez acted out of animosity toward the Bloods, not in self-defense.

¶ 19    Despite Chavez's arguments to the contrary, we conclude the gang evidence was relevant to prove motive, even without direct evidence of a rivalry between GKI and the Bloods. Although Chavez testified that he was familiar with the Bloods because he went to school with members of that gang, there was no evidence that the gangs were affiliated or allied with each other. To the contrary, a critical part of Chavez's theory was that he was *afraid* of Tafoya and Nunez because he recognized them as Bloods. Combined with evidence that he was in a different gang, the jury could reasonably infer that Chavez was afraid of Tafoya and Nunez because of rivalry between their respective gangs and therefore Chavez shot at them out of gang-related animosity.

¶ 20    We further conclude the probative value of the gang-related evidence was not substantially outweighed by the danger of unfair prejudice. To be sure, all gang evidence carries a risk of prejudice. *See People v. Trujillo*, 2014 COA 72, ¶ 72. But the trial court limited the evidence of Chavez's gang affiliation to "gang membership, what gang it was, and the color, if any, that was associated with that gang." The court specifically excluded any evidence of GKI's gang activities, criminal activities, or drug involvement, or other evidence

that could be suggestive of bad character.  It also properly instructed the jury that it could not consider this evidence for any purpose beyond proving Chavez's motive and whether he acted in self-defense.  Therefore, the court properly exercised its discretion to admit this evidence under CRE 403.

¶ 21    Chavez also argues the gang-related evidence was inadmissible under CRE 404(b).  To be admissible under CRE 404(b), evidence must comply with the four-prong test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  It must (1) relate to a material fact, (2) be logically relevant, (3) with relevance independent of the prohibited inference that the defendant committed the charged offense in conformity with his bad character, and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.  *Id.*

¶ 22    The gang-related evidence in this case meets *Spoto*'s requirements.  As described above, it was used to prove a material fact — Chavez's motive and state of mind — which is logically relevant, independent of an inference regarding his bad character or propensity to act in conformity with it.  *See Trujillo*, ¶¶ 72, 76 (while gang-related evidence must be admitted with care, it can be

relevant for non-propensity purposes, such as to show motive). As discussed, the probative value of such evidence was not outweighed by the danger of unfair prejudice. Accordingly, we discern no error.

### 4. Notice

¶ 23 We reject Chavez's argument that the prosecution failed to provide adequate notice of the gang evidence. While he argues, on the one hand, that the prosecution "had always intended to make the case about gangs," he also asserts that the prosecution "was adamant it did not want evidence of gang affiliation" admitted at trial in the first instance. As discussed, it was *defense counsel* who raised the issue of the parties' gang affiliation on the morning of trial. The trial court recognized as much when it admonished the defense for failing to mention "the first thing about gangs until 10 minutes before the jury came down." And in response, defense counsel apologized for *his own* "11th-hour motion."

### III. Self-Defense Jury Instructions

### A. Initial Aggressor Instruction

¶ 24 Chavez also argues that the trial court erred by instructing the jury on the initial aggressor exception to the affirmative defense of self-defense. Reviewing this issue de novo, *People v. Roberts-*

11

*Bicking*, 2021 COA 12, ¶ 32, we conclude the instruction was warranted.

¶ 25    Self-defense is an affirmative defense that allows a defendant to use a reasonable degree of physical force to defend against what he reasonably believes to be the imminent use of unlawful physical force by another.  § 18-1-704(1), C.R.S. 2024.  But this defense is unavailable under certain circumstances, including when the defendant was the initial aggressor — i.e., the person who "initiated the physical conflict by using or threatening the imminent use of unlawful physical force."  *Castillo v. People*, 2018 CO 62, ¶¶ 40, 41 (citation omitted).

¶ 26    A trial court may instruct the jury on an exception to an affirmative defense if "some evidence" supports the exception. *Roberts-Bicking*, ¶ 31.  Any credible evidence — even a mere scintilla — is sufficient to meet this requirement.  *See Galvan v. People*, 2020 CO 82, ¶ 24.  In determining whether this low threshold was met, we view the evidence in the light most favorable to giving the instruction.  *Roberts-Bicking*, ¶ 32; *see also Galvan*, ¶¶ 24, 25 (any credible evidence, even if highly improbable, supports instructing on exception to self-defense).

¶ 27    We conclude there was at least some evidence to support giving the initial aggressor instruction here.  Critically, there was relevant evidence that Chavez recognized Tafoya and Nunez as gang members, that he was a member of a different gang, and that he was afraid of Tafoya and Nunez.  As discussed, the jury could reasonably infer from this evidence that the two gangs were rivals.  We conclude this evidence provided necessary context for other facts that, when viewed together, amounted to some evidence of a threat of unlawful imminent force.

¶ 28    Nunez testified that Elias drove slowly to the parking lot exit nearest to where he and Tafoya were standing and stopped the car, despite the fact that "[t]hey had time to go."  Video evidence taken from nearby showed that the car lingered in the parking lot exit though there was ample time for the car to safely turn onto the street.  During that time, both passenger side windows were down, and Chavez and Elias were looking in the victims' direction and making some movements inside the car before Tafoya and Nunez began walking toward them.  After the shooting, Nunez told police that someone in the car was "talking shit."  And both Chavez and Elias testified that in response to seeing them, Tafoya and Nunez

13

started "throwing up signs" and doing "hand gestures."  They also testified that Tafoya reached behind his back while walking toward the car.

¶ 29    Chavez argues there was no evidence that either he or Elias initiated a physical conflict with Tafoya and Nunez.  He also argues that there was evidence that would tend to disprove the facts described above.[2]  Though the jury can accept or reject this evidence, we conclude it is sufficient to support giving the instruction.  *See People v. Kessler*, 2018 COA 60, ¶ 12 ("[I]t is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence . . . .").  And even though insults alone are not enough to justify an initial aggressor instruction, threats are enough.  *Castillo*, ¶ 52.  Viewing the evidence in the light most favorable to giving the instruction, and in the context of potential gang-related animosity, we reach the same conclusion as the trial court.  That is, the

---

[2] For example, Chavez argues that there was no evidence that he or Elias knew the victims were at the bus stop when they chose to exit the parking lot in that direction, and he points to Nunez's testimony that no threats were exchanged and that Chavez and Elias did not direct any words toward him or Tafoya.

14

totality of the evidence permitted the jury to reasonably infer that Chavez and Elias made some sort of gang-related threat — whether verbal or gestural — of imminent physical violence from the car, causing the victims to react, make hand gestures, and walk threateningly in their direction. *Cf. People v. Tardif*, 2017 COA 136, ¶¶ 24-25 (testimony that the victim "was standing with his hands in his pockets, shirtless, and wearing a bandana the color of a rival gang over his face" and that defendant was intimidated supported heat of passion provocation instruction). Because some evidence supports the initial aggressor instruction, the court did not err by giving it.

### B. Unpreserved Instructional Errors

¶ 30 Chavez asserts multiple instructional errors for the first time on appeal. The Attorney General argues these arguments are barred by the doctrines of waiver and invited error. We conclude Chavez's arguments are properly before us but find no error.

### 1. Waiver, Invited Error, and Standard of Reversal

¶ 31 Waiver is the intentional relinquishment of a known right or privilege. *People v. Rediger*, 2018 CO 32, ¶ 39. Invited error, by

contrast, occurs when a party complains on appeal of an error that he invited or injected into the case.  *Id.* at ¶ 34.

¶ 32     The Attorney General argues Chavez waived or invited the unpreserved instructional errors he asserts on appeal because the defense submitted its own proposed instructions and participated extensively in the formulation of the final instructions.  We are not persuaded.

¶ 33     Although defense counsel participated in jury instruction conferences with the court and prosecutor, we see no indication in the record that he intentionally chose not to object to the instructions.  *Id.* at ¶ 3 (mere acquiescence is not waiver).  The parties did not discuss the specific language Chavez challenges on appeal.  *Id.* at ¶ 43 (no waiver absent such discussion).  And Chavez did not propose any of the instructions he challenges here.  *Id.* at ¶ 34 (describing invited error).  We therefore conclude Chavez's arguments were not waived or invited.

¶ 34     Instead, we conclude Chavez forfeited his unpreserved jury instruction arguments, and we review these issues for plain error.  *Id.* at ¶ 40.  An error is plain if it is obvious and substantial.  *Id.* at ¶ 48.  To qualify as obvious, it must be so clear cut that a trial

judge should be able to avoid it without benefit of objection. *People v. Crabtree*, 2024 CO 40M, ¶ 42. An error is substantial if it affected the accused's substantial rights — that is, it so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at ¶ 43.

2. Totality of the Circumstances (Multiple Assailants) Instruction

¶ 35 Chavez argues the trial court erred by failing to direct the jury to consider the totality of the circumstances regarding self-defense, specifically that there were multiple people appearing to pose a threat to him. We disagree.

¶ 36 We review jury instructions de novo to determine if they correctly informed the jury of the applicable law. *Roberts-Bicking,* ¶ 17. In a self-defense case involving multiple assailants, the trial court must instruct the jury to consider the totality of the circumstances impacting an accused's belief in the necessity of defensive action, including the number of persons reasonably appearing to be a threat. *Id.* at ¶¶ 19, 20 (discussing *People v. Jones*, 675 P.2d 9, 14 (Colo. 1984)).

¶ 37    Chavez argues that the jury should have been instructed on multiple assailants because there was evidence that he feared use of force from both Tafoya and Nunez. Because he did not request this instruction, however, the inquiry before us is not whether there was sufficient evidence to support giving it. Rather, because we are reviewing for plain error, we must consider whether the evidence and arguments before the trial court created such an obvious need for a multiple-assailants instruction that the trial court should have intervened sua sponte to give one. On this record, we cannot reach that conclusion.

¶ 38    Contrary to his argument on appeal, at trial, Chavez testified that he was not concerned about Nunez as an assailant, did not fire at him, and would not have fired at all if Tafoya had not reached behind his back. Defense counsel emphasized this testimony during closing argument, arguing that Chavez's "five shots were directed at the real and actual threat" (Tafoya) and none were directed at Nunez.

¶ 39    In light of this evidence and Chavez's theory of defense, we conclude the trial court did not plainly err when it didn't sua sponte instruct the jury to consider the totality of the circumstances,

18

specifically whether there were multiple assailants. Even though two individuals were walking toward Chavez when he decided to shoot, Chavez's testimony suggested he only perceived one assailant — Tafoya. And recall that Chavez did not request a multiple-assailants instruction. Moreover, he specifically argued that Nunez was not a threat. Had the trial court sua sponte given an instruction that suggested there were multiple assailants, the instruction may have undermined his theory of defense. For these reasons, we cannot conclude there was an obvious need to instruct the jury on multiple assailants.

### 3. Bystander and Lesser Included Offense Instructions

¶ 40    Chavez next asserts that the self-defense instructions were internally inconsistent, inaccurate, and incomplete because they did not uniformly apply self-defense to (1) innocent bystanders or (2) lesser included offenses.[3] We are not persuaded.

¶ 41    First, Chavez takes issue with the fact that one self-defense instruction explained that self-defense applies to innocent

---

[3] While Chavez's opening brief also includes a passing reference to a conflict between the complicity and self-defense instructions, he does not develop that argument, so we do not consider it. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007).

bystanders, while two others did not.[4]  He argues this inconsistency was obvious error under *People v. Koper*, 2018 COA 137, because — he asserts — the "bystander exception" applies in all cases involving self-defense.

¶ 42    As we read Chavez's argument, he claims the self-defense instructions were inconsistent because they suggested that self-defense applies to innocent bystanders with respect to murder after deliberation but not attempted murder after deliberation or extreme indifference murder.  But Chavez tendered the self-defense instructions for the latter two offenses, and these instructions did not reference innocent bystanders.  Under the doctrine of invited error, he cannot challenge the lack of an innocent bystander reference in those two instructions.  Instead, his only viable argument is that the instruction that references innocent bystanders — self-defense for murder after deliberation — should have been consistent with the two that did not.  Because Chavez

---

[4] The instruction on deadly physical force as an affirmative defense to murder after deliberation referenced innocent bystanders, but the instructions on nondeadly physical force as an affirmative defense to attempted murder after deliberation and self-defense as a traverse to extreme indifference murder did not.

was acquitted of murder after deliberation, any error in that instruction inured to his benefit and cannot have been substantial error. Therefore, there was no plain error.

¶ 43 Second, Chavez asserts plain error based on a conflict between a lesser included offense instruction and one of the self-defense instructions. Instruction No. 19 set forth the elements of attempted second degree murder and attempted manslaughter as lesser included offenses of attempted extreme indifference murder. One of the required elements for these lesser included offenses was that Chavez's "conduct was not legally authorized by the affirmative defense in Instruction 38." Instruction No. 38, in turn, defined self-defense as an affirmative defense to attempted murder after deliberation. It did not reference any lesser included offenses.

¶ 44 We conclude that, read as a whole, the instructions were not plainly erroneous. Chavez argues that based on the above instructions, the jury was never told that self-defense could apply to lesser included offenses. But the instruction on lesser included offenses specifically instructed the jury that if Chavez's actions were legally authorized by self-defense, it should find him not guilty for those offenses. While we recognize the instructions related to

21

different forms of attempted murder and did not expressly cross-reference each other, we conclude the overall instructions were not so confusing as to cast serious doubt on the verdict. Because the instructions correctly informed the jury that it could apply self-defense to the lesser included offenses, we discern no plain error. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001).

## IV.    Cumulative Error

¶ 45    Finally, because we have rejected all of Chavez's individual claims of error, his cumulative error argument is without merit.

## V.    Disposition

¶ 46    The judgment is affirmed.

JUDGE GROVE and JUDGE BERNARD concur.

22