2015 CO 45

**Armando M. PEREZ, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 11SC638**

Supreme Court of Colorado.

June 15, 2015

398

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Dayna Vise, Deputy Public Defender, Denver, Colorado.

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we consider the narrow question of whether the trial court's improper admission of unfairly prejudicial 404(b) evidence offered to establish the defendant's intent in a single count warrants reversing the two remaining convictions of the defendant, Armando M. Perez. The trial court allowed 404(b) evidence for the limited purpose of showing Perez's intent to commit sexual assault or unlawful sexual contact upon a child for the count of enticement of a child. In so doing, it excluded the jury's use of the 404(b) evidence for any element for the two remaining counts—sexual assault on a child and second-degree kidnapping. On appeal, the court of appeals concluded that the trial court abused its discretion when it allowed the evidence and that the error was not harmless. *People v. Perez*, No. 08CA1055, slip op. at 9 (Colo. App. June 9,

2011). Thus, it reversed the enticement conviction. *Id.* at 1. The court of appeals, however, affirmed the defendant's sexual assault and kidnapping convictions because it presumed that the jury followed the limiting instructions not to consider the evidence for any element of those two counts. *Id.* at 10–11.

¶ 2 The People did not appeal the court of appeals' ruling that the trial court erred in admitting the 404(b) evidence. We granted Perez's petition for certiorari to determine whether the improper 404(b) evidence admitted at trial for the enticement count warrants reversal of Perez's sexual assault and kidnapping convictions.[1] We reverse the court of appeals and hold that when the trial court abused its discretion in admitting 404(b) evidence of Perez's prior bad acts for a single count, under the facts of this case the error was not harmless as to the convictions on the two remaining counts. We conclude that the error was not harmless as to those convictions because (1) all of the counts for which the defendant was convicted included a similar element regarding sexual conduct, and (2) the prosecutor's statements and arguments urged the jury to consider the 404(b) evidence beyond its limited scope and implied that it was relevant to all counts. We therefore vacate Perez's convictions for sexual assault on a child and second-degree kidnapping and remand to the court of appeals with instructions to return the case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 On February 5, 2007, C.B., a fourteen-year-old girl, and her boyfriend, M.G., went to the movies after school. C.B. told her father where she was going and that she would be back around 6 p.m. After the movie finished, C.B. and M.G. rode a bus to take C.B. home. After they exited the bus, they walked toward C.B.'s home. At that time, a red car pulled up beside them, and the driver, Perez, asked C.B. if she wanted a ride. C.B. refused, and Perez drove away. C.B.

and M.G. then went in different directions. After M.G. started walking away to catch the bus to his home, he noticed that the red car turned around and again pulled up beside C.B.

¶ 4 At trial, C.B. testified that when the red car pulled up to her a second time, Perez asked if she wanted to smoke marijuana or do cocaine, and she responded that she did not. Perez then threatened C.B. and ordered her into the car. C.B. became scared and got in the passenger seat. Perez drove her to a location unfamiliar to C.B. and sexually assaulted her. He then drove C.B. back to her house and asked if he could meet her again. Before she left, he told her that he was going to wait at the same spot after school for her and that he would bring her a "twenty- or a forty-sack" of marijuana.

¶ 5 When C.B. returned home, it was after her curfew. Upon entering the house, she rushed to the bathroom, showered, and then locked herself in her room. She did not speak to anybody in the house for the remainder of the night. M.G. testified that he hid behind a car when the red car pulled up next to C.B. a second time and hurried to C.B.'s father's house after C.B. left in the red car because he was concerned. He said he had never seen the red car before. He then waited with C.B.'s father and stepmother until C.B. returned. When C.B. entered the house, M.G. thought that she seemed surprised to see him because she must have assumed he had gone home. He also testified that he believed that she had some type of drugs in her system.

¶ 6 That night, C.B. wrote a letter to one of her friends detailing the incident. She called the friend and told her that she was hoping to ride with the friend to school the next day. The following day, the friend took C.B. to school, and C.B. gave the letter to the friend and told her about the incident. The friend reported what happened to a teacher, and the school contacted the police. When interviewed by the police, C.B. recalled the

---

1. Specifically, we granted certiorari to answer the following question: "Whether the court of appeals erred in affirming the petitioner's sexual assault on a child and kidnapping convictions, despite reversing his enticement conviction because improper 404(b) evidence was admitted at trial."

license plate number of the car and a description of the car and driver. Later, she identified Perez out of a photo lineup.

¶ 7 The police arrested Perez and charged him with (1) sexual assault on a child, (2) second-degree kidnapping with a sexual assault enhancing factor, and (3) enticement of a child. Sexual assault on a child, a class 3 felony, requires proof that Perez subjected C.B. to sexual contact. § 18–3–405, C.R.S. (2014). Second-degree kidnapping with the sexual assault enhancing factor, a class 2 felony, requires proof that Perez knowingly took, enticed, or decoyed C.B. with the intent to keep her from her parents, and that C.B. was the victim of a sexual offense. § 18–3–302. Enticement of a child, a class 4 felony, requires proof that Perez invited or persuaded, or attempted to invite or persuade, C.B. to enter his vehicle with the intent to commit sexual assault or unlawful sexual contact. § 18–3–305. The defense's theory of the case was that C.B. got into Perez's care voluntarily and that any sexual contact was consensual and was done to obtain drugs.

¶ 8 Before trial, the People filed a notice of intent to introduce evidence of prior bad acts pursuant to CRE 404(b) and section 16–10–301. The proposed prior bad acts evidence concerned O.D., a forty-two-year-old married woman, who would testify about her encounters with Perez four years before this incident. The People proposed to offer the evidence as "prior sexual assaults."[2] In the motion, the People argued that O.D.'s testimony would show Perez's knowledge, common plan, or scheme to: (1) choose isolated and vulnerable victims, (2) gain their trust before attempting unwanted sexual contact, and (3) persist in trying to get sexual gratification from the victims despite their objections. The trial court, after reviewing the prosecution's motion and hearing counsels' arguments, including defense objections,[3] found the evidence relevant only to the en-

ticement-of-a-child count for the limited purpose of showing Perez's "intent to commit sexual assault or unlawful sexual contact upon [a] child." The court noted that, even though the encounter with C.B. and the incidents with O.D. were "dissimilar in some ways" and "involve[d] victims of different ages, involve[d] different factual circumstances and different … modis operandis [sic]," the prior incidents with O.D. were relevant to the charge of enticement of a child because "Perez had previously gone through similar efforts … to initiate contact with another individual he did not otherwise know."

¶ 9 Prior to opening statements, the defense renewed its objection to the admission of the 404(b) evidence and sought further clarification as to its limited purpose at trial because the defense wanted to know the extent to which the prosecutor could use the evidence in his opening statements. The prosecutor responded by saying that he did not "remember any limitation as to any count" and that he was going to use the evidence in his opening statement to show a common scheme or design by Perez to isolate females for sexual purposes. The court reminded counsel that it limited the evidence to the enticement-of-a-child count, denied the defense's motion to reconsider its ruling on the admissibility of the evidence, and said that it would listen to the recording of the motion's hearing and "clarify the ruling" during trial. The court then elaborated that, although it would provide a limiting instruction before O.D. testified, it would not provide a limiting instruction for the evidence prior to opening statements.

¶ 10 During opening statements, the prosecutor asserted that Perez used what he learned from the incidents with O.D. to victimize C.B.:

> identify, surreptitiously isolate and confront vulnerable females for the purpose of engaging in sexual contact with them. The commonality of [Perez's] scheme in each prior case and the instant case is startling.....

**2.** In particular, the motion stated that the People would offer the prior bad act evidence at trial for the following purposes:

> to demonstrate that [Perez] committed the assault at issue in this case.... Specifically, the above-reference criminal acts are so factually similar that they demonstrate [Perez's] knowledge of how to, and his plan and scheme to,

**3.** The trial court granted the motion in part without pre-trial testimony or an offer of proof.

[W]hat you ... will learn, ladies and gentlemen, is that this defendant, on February 5th of 2007, was applying the lessons that he had learned in 2003. In 2003, [Perez] attacked a thirty-eight-year-old woman for sexual purposes.... She was able to prevent any unwanted sexual contact from happening. She was able to maintain spaces between herself and [Perez].

But on February 5th, 2007, he took those lessons and he applied them to [C.B.] and he made sure that she was alone, where no one—where she could not get away, where he could do what he wanted to do to her.

The prosecutor did not mention that the jury had to limit its consideration of the evidence to only the enticement count.

¶ 11 Before O.D. testified, and outside the jury's presence, the court addressed the 404(b) evidence again. The court further explained its ruling and, once again, articulated that it was limiting the 404(b) evidence to the intent element of the enticement count. In so doing, the court acknowledged that it was admitting the evidence for a "more narrow" purpose than what "the People originally had requested." The defense renewed its objection to admission of the evidence for any purpose and argued that because the prior incidents with O.D. did not involve a completed sexual assault and there was only speculation as to Perez's intent, the prior incidents were merely propensity evidence. The court disagreed and found that, although the prior incidents did not involve a sexual assault, the incidents were an "aborted attempt" at a sexual assault.

¶ 12 Then, immediately before O.D. testified, the trial court instructed the jury that the evidence would be offered for a limited purpose: "to prove that [Perez] had the intent to commit sexual assault or unlawful sexual contact upon a child." The court did not specify that this intent was a required element of enticement of a child nor did it instruct the jury that it could consider the evidence for that count only. The court did, however, tell the jury before O.D. testified that "[t]his evidence may not be used to show that [Perez] had a particular character or bad character, or that he had acted in con-

formity with that character." Additionally, the court instructed the jury that this evidence could not be used to show that Perez had a propensity to commit that type of offense. The defense, once again, renewed its objection to the introduction of this evidence.

¶ 13 After the limiting instruction was read to the jury, O.D. testified that, in June 2003, Perez showed up at O.D.'s house at approximately 11 p.m. while O.D.'s husband was away. O.D., who did not know Perez, was afraid. Perez told her that he had flowers for her and, despite her objections, opened the security door to O.D.'s apartment. Perez smelled like alcohol and told O.D. that she smelled good. O.D. pushed Perez away and closed the door. A few weeks later, O.D. woke up and thought she saw a shadow in her window. She believed, at the time of trial, that the shadow was Perez because he came to the same window in a later incident.

¶ 14 Shortly thereafter, O.D. received a notice that a "monthly inspection" of her home would take place on June 24, 2003. On that date, a man arrived, and when O.D. asked him if he was there "to do the inspection," he said, "Yes." The man next requested her name and telephone number. O.D. did not provide that information but let him inside. The man asked to see her room and told her that it was "sexy." He then went into other rooms. After looking around the bathroom, he told O.D., "You look good." At that point, O.D. "realized that [the 'inspector'] was [Perez]." She told him to keep checking the apartment and immediately ran to her neighbor's home. Perez then left.

¶ 15 Eleven days later, O.D. again saw Perez. This time he was outside her bedroom window at about 11 p.m. He told her, "Open the window. I have some flowers for you." After seeing Perez in the window, O.D. ran to her husband, who was in a different room, and told him what had happened. The husband then grabbed a knife, ran outside, and identified Perez's car. He memorized the license plate number and contacted the police. The police later arrested Perez. O.D. testified that although Perez made sexually charged comments to her, he did not

sexually contact her during any of the incidents.[4]

¶ 16 At the end of trial, the court provided the jury with a written instruction about how it should consider O.D.'s testimony. The court again directed the jury to consider the evidence for the limited purpose of showing Perez's intent to commit sexual assault on C.B. and not as proof of his bad character or propensity to commit sexual offenses. For the first time, the court told the jury that such intent related only to the enticement-of-a-child count. The relevant part of the instruction read:

> The court admitted certain evidence for a limited purpose. At that time you were instructed not to consider it for any purpose other than the limited purpose for which it was admitted.
>
> In this case, the Court admitted evidence relating to prior events involving [O.D.] for the limited purposes of demonstrating Defendant's intent to commit a sexual assault upon [C.B.] on February 5, 2007. This evidence was admitted solely for the limited purpose of demonstrating such intent as it relates to Count No. 3, Enticement of a Child. Such evidence cannot be used by you to determine that Defendant has a propensity to commit such acts, nor that he has a bad character, nor that he acted in conformity with any such character at the time of the offenses alleged in the Complaint or Information. It is your decision to determine what weight, if any, to give to the evidence of these prior acts.
>
> You are again instructed that you cannot consider evidence admitted for a limited purpose except for the limited purpose for which it was admitted.

¶ 17 Despite the written jury instruction to consider the 404(b) evidence for the intent element of the enticement count only, the prosecutor, during closing arguments, argued the evidence had a broader scope. He once again used the theme that Perez was "applying lessons that he learned" from the incidents with O.D. At the end of his closing argument, the prosecutor stated to the jury that, while "you can only use [prior bad acts evidence] to determine his level of intent as it relates to Count 3, enticement of a child," that evidence can be "pretty powerful." The prosecutor elaborated: "What was his intent? Well, his intent surely wasn't innocent. His intent was to have sexual contact with [O.D.] [in public]. . . ." The prosecutor then twice more mentioned that Perez intended to have "sexual contact" with O.D.

¶ 18 In rebuttal, the prosecutor again argued that Perez applied the lessons he had learned from the incidents with O.D. to his subsequent interaction with C.B. He stated, when discussing sexual contact, that "[Perez] had learned in 2003 that he had [to] do something better than just to come up to somebody's house in the middle of the night and try to get in. He had to be more isolated. That's the lesson he learned and applied with C.B."

¶ 19 After deliberating, the jury convicted Perez on all three counts. Ultimately, the trial court sentenced Perez to twenty-four-years-to-life in the Department of Corrections.

¶ 20 Perez appealed the convictions to the court of appeals, which held that the trial court abused its discretion in admitting evidence of Perez's prior incidents with O.D. because the evidence's danger of unfair prejudice substantially outweighed its probative value and was therefore impermissible. *Perez*, slip op. at 9. The court of appeals then analyzed the error under harmless error review because the defense properly objected to the evidence's admission. *Id.* at 9–10. The court concluded that the erroneous admission of O.D.'s testimony was not harmless because "credibility [was] the determinative factor at trial," and C.B.'s actions "could be explained by her having entered the car voluntarily and participat[ing] in some sexual conduct to obtain drugs." *Id.* The court of appeals reasoned, however, that the erroneous admission of O.D.'s testimony did not affect Perez's convictions for the sexual-as-

---

4. Perez was charged with, and pleaded guilty to stalking, a class 5 felony. In addition to the stalking charge, Perez was charged with felony trespass, which was later dismissed. He was not charged with attempted sexual assault.

sault-on-a-child and second-degree-kidnapping counts. *Id.* at 11. It held that reversal as to the remaining two convictions was unnecessary because it presumed that the jury followed the instructions to consider the evidence only for the enticement count and because the 404(b) evidence was not so inflammatory as to cause the jury to disregard the instructions. *Id.* at 10–11. Thus, the erroneous admission implicated only the enticement conviction. *Id.* at 10. The People do not contest the court of appeals' conclusion that the admission of the 404(b) evidence was in error.

¶ 21 We granted certiorari to determine the narrow issue of whether the improper 404(b) evidence admitted at trial for the enticement count warrants reversal of Perez's two remaining convictions for sexual assault on a child and second-degree kidnapping. We conclude that reversal is necessary under the unique set of facts in this case because when the trial court abused its discretion in admitting the 404(b) evidence for one count, the error was not harmless as to the convictions on the two remaining counts. Hence, we reverse the court of appeals, vacate Perez's convictions on the two remaining counts, and remand to the court of appeals with instructions to return the case to the trial court for further proceedings consistent with this opinion.

## II.  Standard of Review

¶ 22 Trial courts have substantial discretion to decide whether to admit evidence of prior bad acts. *E.g., People v. Snyder,* 874 P.2d 1076, 1080 (Colo.1994). A trial court's decision to admit evidence is reviewed for abuse of discretion and will be disturbed on appeal only if it was manifestly arbitrary, unreasonable, or unfair. *Id.* When the defense properly objects to the admission of evidence, harmless error review applies, and reversal is required if the error affects the defendant's substantial rights. *E.g., People v. Garcia,* 28 P.3d 340, 344 (Colo.2001). Under harmless error review, the reviewing court asks "whether the error substantially influenced the verdict or affected the fairness of the trial proceedings." *People v. Gaffney,* 769 P.2d 1081, 1088 (Colo. 1989).

## III.  Analysis

¶ 23 The narrow issue here is whether the trial court's improper admission of unfairly prejudicial 404(b) evidence for a single count warrants reversing Perez's convictions for the remaining two counts. To resolve this issue, we first examine the law concerning the admissibility of 404(b) evidence. We then explain how the risk of unfair prejudice to Perez was high. We conclude by holding that when the trial court abused its discretion in admitting the 404(b) evidence for a single count, under the facts of this case the error was not harmless as to the convictions for the two remaining counts because (1) all counts for which the defendant was convicted include a similar element regarding sexual conduct, and (2) the prosecutor's statements and arguments urged the jury to consider the 404(b) evidence beyond its limited scope and implied that it was relevant to all counts.

## A.  Admissibility of CRE 404(b) Evidence

¶ 24 The Colorado Rules of Evidence expressly limit the admissibility of evidence of other crimes, wrongs, or acts. CRE 404(b). This evidence is inadmissible to prove a person's character to show that the person acted according to that character on a particular occasion. *Id.* We have articulated three reasons why evidence of prior bad acts is restricted: (1) the risk that a jury may convict a defendant as punishment the defendant for past acts or because the jury sees the defendant as "undesirable," (2) the possibility that a jury will place more weight than it should on the character evidence, and (3) the concern that it is unfair to require a defendant to disprove the prior bad acts in addition to defending against the crime charged. *Kaufman v. People,* 202 P.3d 542, 552 (Colo.2009). In other words, even though this evidence may have some logical relevance, its prejudicial effect may outweigh its probative value under Rule 403. *People v. Rath,* 44 P.3d 1033, 1038 (Colo.2002). Rule 404(b), however, may allow this evidence when it is used for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, Rule 404(b)

does not necessarily bar evidence when it is offered for any other purpose. *See Rath*, 44 P.3d at 1038–39.

¶ 25 Bearing in mind the limitations of 404(b) evidence, we have articulated a four-part test to determine the admissibility of evidence of other crimes, wrongs, or acts under Rule 404(b). *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). To be admissible under the *Spoto* test, the 404(b) evidence must: (1) relate to a material fact; (2) be logically relevant; (3) have a logical relevance that "is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character" and committed the crime charged because he acted in conformity with that bad character; and (4) have a probative value that is not substantially outweighed by the danger of unfair prejudice. *Id.* Under the third part of the test, the prosecution must state "a precise evidential hypothesis" for how the prior act evidence tends to prove something permissible under Rule 404(b). *Id.* at 1319. The fourth part of the test recites the balancing test found in Rule 403. *See id.* at 1318.

## B. The 404(b) Evidence's Danger of Unfair Prejudice Was High

¶ 26 The court of appeals determined that the trial court in this case improperly admitted unfairly prejudicial 404(b) evidence for the purpose of showing Perez's intent to commit sexual assault for the enticement count only. When applying the four-part *Spoto* test, the court of appeals reasoned that the first *Spoto* factor was satisfied because the trial court admitted O.D.'s testimony to prove Perez's intent to sexually assault C.B., which goes to an element of the enticement count. *Perez*, slip op. at 8. The court determined, however, that under the second *Spoto* factor, the 404(b) evidence has little logical relevance to Perez's intent to sexually assault C.B. because the prior incidents with O.D. "are so dissimilar to the facts of the charged crime that [their] probative value, if any, was minimal." *Id.* at 8–9. Thus, the court of appeals concluded that the fourth *Spoto* fac-

tor was not satisfied because the danger of unfair prejudice substantially outweighed the evidence's "negligible probative value." *Id.* at 9. Because the evidence did not satisfy the fourth *Spoto* factor, the court of appeals concluded that the trial court abused its discretion.[5] *Id.* Furthermore, the court of appeals held that the erroneous admission was not harmless because "there is a reasonable probability that the prior acts evidence contributed to [Perez's] conviction for enticement." *Id.* at 9–10. The court of appeals therefore reversed Perez's enticement-of-a-child conviction and remanded the case to the trial court on that count. *Id.* at 1. The prosecution elected not to seek certiorari review on this issue.

¶ 27 While the People did not appeal whether the trial court abused its discretion in admitting the evidence of Perez's prior incidents with O.D., we nevertheless need to consider the evidence's prejudicial nature in light of its minimal probative value. Even though Rule 404(b) has no requirement of similarity, its probative value may include factors such as the other acts' "distinctiveness" and "their relationship to the charged offense in terms of time and similarity." *Rath*, 44 P.3d at 1041. Here, as the court of appeals correctly noted, there was a "substantial dissimilarity" between the facts of the 404(b) evidence and the facts of the charged crimes. *Perez*, slip op. at 9. Unlike C.B., O.D. testified that Perez did not sexually assault her, did not touch her, and did not offer her any drugs. O.D. acknowledged that she was "afraid" of Perez but did not testify as to what she thought would happen had she not sought help. Though Perez's behavior was disturbing, intrusive, and resulted in a stalking conviction, it is important to note that he was never charged with a sexual offense for these incidents. Additionally, C.B.'s testimony concerning the alleged offenses lacked most of the "distinctiveness" of Perez's prior incidents with O.D. O.D. testified that Perez brought her flowers and peered in her window on multiple occasions. C.B. never mentioned flowers or Perez look-

---

5. The court did not address the third *Spoto* factor under the analysis because the evidence failed the fourth *Spoto* factor.

ing in her window. The only common distinctive feature among O.D.'s and C.B.'s testimonies was that Perez complimented both on their appearances. Moreover, while O.D. testified as to multiple encounters with Perez over a period of time, C.B. met Perez only once. Therefore, based on these factors, the 404(b) evidence was only minimally probative of his intent to commit sexual assault on C.B. and was little more than propensity evidence.

¶ 28 In contrast, the 404(b) evidence's danger of unfair prejudice was high. Evidence of other crimes, wrongs, or acts, such as O.D.'s testimony concerning her prior incidents with Perez, "has a distinct and unmistakable potential for unfair prejudice." *Rath*, 44 P.3d at 1043. Unfair prejudice refers to " 'an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis.' " *Id.* at 1043 (quoting *People v. Gibbens*, 905 P.2d 604, 608 (Colo.1995)). In this case, the 404(b) evidence portrayed Perez as "undesirable," *Kaufman*, 202 P.3d at 552, and likely biased the jury against Perez and the defense's theory of the case because of how it portrayed Perez's character. *See People v. Dist. Court*, 869 P.2d 1281, 1286 (Colo.1994) (" 'Unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, such as the jury's bias, sympathy, anger or shock.' " (quoting *People v. Goree*, 132 Mich.App. 693, 349 N.W.2d 220, 225 (1984))). As a result, there is a strong possibility that the evidence influenced the jury to convict Perez for the count of enticement of a child for an improper purpose. Therefore, even though trial courts retain significant discretion under the fourth prong of the *Spoto* test, and reviewing courts must give the evidence its maximum probative value and minimum unfair prejudice, *Rath*, 44 P.3d at 1043, the 404(b) evidence's danger of unfair prejudice substantially outweighed any probative value

that the evidence had concerning Perez's intent to commit sexual assault on C.B.

¶ 29 We now turn our attention to the impact the improper 404(b) evidence had on the two remaining convictions.

### C. The Trial Court's Error Was Not Harmless as to the 4 Sexual–Assault-on-a-Child and Second–Degree–Kidnapping Convictions

¶ 30 The danger of unfair prejudice and the likelihood that this evidence caused the jury to make its decisions on an improper basis did not end at the enticement count. Rather, the erroneous admission of the 404(b) evidence substantially affected Perez's rights as to the convictions for the other two counts. Although we usually presume that juries are capable of limiting evidence to a particular count in a manner that does not substantially affect a defendant's rights as to the other counts, *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1088–89 (Colo.2011); *People v. Dunlap*, 975 P.2d 723, 743 (Colo. 1999), here the limiting instructions expressly directed the jury to consider evidence that never should have been admitted in the first place for a limited purpose, and thus drew the jury's attention to the inadmissible evidence. Two circumstances unique to this case then blurred the distinctions between the counts and significantly increased the likelihood that the jury could not appropriately limit its consideration of the improper evidence to the enticement count.[6]

¶ 31 In this case, we review for harmless error the effect of the trial court's erroneous admission of the 404(b) evidence on the convictions for the remaining two counts because the defense properly objected to the evidence's admission for any purpose. We determine that the 404(b) evidence was not harmless as to the remaining two counts because (1) all three counts for which Perez was convicted include a similar element regarding sexual conduct, and (2) the prosecutor's

---

6. The exception to the presumption that juries follow their limiting instructions found in *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is inapplicable to this case. *Bruton* concerned whether the Court could presume that the jury followed an instruction to limit inadmissible evidence to a defen-

dant's one count in a joint trial. *Id.* at 124–25, 88 S.Ct. 1620. In contrast, we are reviewing the effect of the trial court's decision to admit improper evidence for one element of a single count on the remaining two counts when the prosecutor argued that the improper evidence was relevant to the remaining counts.

statements and arguments repeatedly urged the jury to consider the 404(b) evidence beyond its limited scope and implied that it was relevant to all counts.

### 1. All Three Counts for Which Perez Was Convicted Include a Similar Element Regarding Sexual Conduct.

¶ 32 All three counts in this case arose during a short timeframe, and all three charged Perez with having the intent to have illegal sexual contact with C.B. The counts for sexual assault on a child, enticement of a child, and second-degree kidnapping with the sexual assault enhancing factor all stemmed from a series of interrelated events after Perez pulled his car up next to C.B.

¶ 33 More importantly, the jury had to navigate three counts that each required the prosecution to prove similar elements. The counts of sexual assault on a child and enticement of a child both have an element involving sexual assault, and the charged enhancing factor for second-degree kidnapping requires the kidnapped person to be a victim of a sexual offense. Specifically, to prove every count charged, the People had to show that Perez intended to or did subject C.B. to sexual conduct:

- sexual assault on a child requires proof that Perez knowingly subjected C.B. to "*sexual contact,*" § 18–3–405(1) (emphasis added);

- enticement of a child requires proof that Perez tried to get C.B. to enter his vehicle "with the intent to commit *sexual assault or unlawful sexual contract*" § 18–3–305(1) (emphasis added); and

- kidnapping with the enhancing factor requires proof that Perez took away C.B. with intent to conceal her from her parents and, during this encounter, C.B. was

subjected to a "*sexual offense,*" § 18–3–302(2), (3)(a) (emphasis added).[7] In other words, all three counts required the prosecution to prove similar elements regarding sexual conduct.

¶ 34 Hence, the danger that the jury conflated the different elements of the three charged counts is substantial, increasing the risk that the 404(b) evidence played an impermissible role in the jury convicting Perez on the remaining two counts. We now explain why the prosecutor's actions amplified this risk and caused the trial court's error not to be harmless.

### 2. The Prosecutor's Statements and Arguments Urged the Jury to Consider the 404(b) Evidence Beyond Its Limited Scope and Implied That It Is Relevant to All Counts.

¶ 35 The prosecutor's statements and arguments implied that the jury could consider Perez's prior incidents with O.D. for other purposes in addition to Perez's intent to commit sexual assault for the enticement-of-a-child count. Despite the court's attempt to limit the 404(b) evidence, the prosecutor used the evidence of the prior incidents to show Perez's knowledge, common plan, or scheme to: (1) choose isolated and vulnerable victims, (2) gain their trust, and (3) persist in trying to get sexual gratification from the victims despite their objections. This portrayal emphasized a broader use for the 404(b) evidence and painted Perez as a person with a penchant for committing all three charged crimes.

¶ 36 Although the proof required for the enticement count differs slightly from the other two counts because it does not require proof of a completed sexual offense, the pros-

---

7. In particular, the statutes concerning sexual assault on a child, enticement of a child, and second-degree kidnapping read as follows:

- Sexual assault on a child occurs when "[a]ny actor who knowingly subjects another not his or her spouse to *any sexual contact* . . . if the victim is less than fifteen years of age." § 18–3–405(1) (emphasis added).

- Enticement of a child occurs when "he or she invites or persuades, or attempts to invite or persuade, a child under the age of fifteen years to enter any vehicle, building,

room, or secluded place with the intent to commit *sexual assault or unlawful sexual contact* upon said child." § 18–3–305(1) (emphasis added).

- Second-degree kidnapping with the enhancing factor occurs when "any person . . . takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian . . ." and "[t]he person kidnapped is a victim of a *sexual offense.* . . . § 18–3–302(2), (3)(a) (emphasis added).

ecutor's comments suggested that the jury could consider Perez's prior incidents with O.D. for all three counts. The prosecutor, in his opening statement and closing argument, characterized Perez's incidents with O.D. as failed attempts to commit sexual assault and suggested that the evidence could be used beyond its limited use for the intent element of the enticement count.

¶ 37 First, in his opening statement, the prosecutor did not adhere to the trial court's reminder that the 404(b) evidence was limited to the enticement count. Instead, the prosecutor suggested a broader use for the evidence. He told the jury that Perez "was applying lessons he learned in 2003," "[he] attacked a thirty-eight-year-old woman for sexual purposes," and "[he] took those lessons and he applied them to [C.B.] and he made sure that she was alone, ... where she could not get away, where he could do what he wanted to do to her."

¶ 38 Later, in his closing argument, the prosecutor repeated his theme that Perez was "applying lessons that he learned" from the incidents with O.D. Although the prosecutor recognized the court's limiting instruction when he stated to the jury that "you can only use [prior bad acts evidence] to determine his level of intent as it relates to Count 3, enticement of a child," he nevertheless directed the jury that this evidence could be "pretty powerful" because it was Perez's "intent ... to have sexual contact with [O.D.] [in public]." He stated, when discussing sexual contact, that "[Perez] had learned in 2003 that he had [to] do something better than just to come up to somebody's house in the middle of the night and try to get in. He had to be more isolated. That's the lesson he learned and applied with C.B."

¶ 39 These statements implied that Perez not only intended to entice C.B. to get into his car, but that he intended to, and did, kidnap her. The prosecutor commented that, unlike with O.D., Perez "had to be more isolated" and that Perez "made sure that [C.B.] was alone," "where she could not get away." These statements therefore invoked the very nature of kidnapping—taking a child with the intent to conceal her. *See* § 18–3–302(2).

¶ 40 Similarly, the prosecutor suggested that the 404(b) evidence was relevant for the sexual assault count when he mentioned that Perez "inten[ded] ... to have sexual contact with [O.D.]" and that Perez learned his "lesson" from these early incidents and "applied" that knowledge to his encounter with C.B. The prosecutor made this suggestion even though O.D. did not testify that Perez made any sexual contact with O.D. in the prior incidents.

¶ 41 Thus, the prosecutor urged the jury to consider unfairly prejudicial and improperly admitted evidence beyond the limited scope of intent for the enticement count. His use of the "lessons learned" theme suggested to the jury that not only did Perez intend to commit sexual assault, but he also was better prepared than he was with O.D. to kidnap and sexually assault C.B. Moreover, while acknowledging that the 404(b) evidence was limited to the intent element of the enticement count only, the prosecutor told the jury that the evidence could be "pretty powerful" and nonetheless repeatedly implied that the jury could apply the inadmissible evidence to the sexual assault and kidnapping counts. *E.g., Rath,* 44 P.3d at 1043 (unfair prejudice refers to evidence's undue tendency to suggest to the jury to make its decision based on an improper basis). In other words, the prosecutor, in both his opening statement and closing argument, suggested that Perez's incidents with O.D. were evidence of a pattern of behavior that included the sexual conduct required for all three counts. And because the prosecutor asked the jury to consider the unfairly prejudicial evidence of Perez's character during opening statements, through O.D.'s testimony, and during closing arguments, this evidence permeated all aspects of the trial and increased the likelihood that the 404(b) evidence substantially influenced the jury to convict Perez on the remaining two counts.

### 3. The Unique Circumstances of This Case Warrant Reversal as to the Remaining Two Counts.

¶ 42 These circumstances are unique in this case. Together, these circumstances significantly increased the likelihood that the

jury did not limit its consideration of the 404(b) evidence and instead allowed the evidence to substantially influence its verdict as to the two remaining counts. First, it was less likely that the jury could compartmentalize the evidence of Perez's incidents with O.D. to just the enticement count because all of the counts included similar elements of sexual conduct that occurred during the limited timeframe of Perez's encounter with C.B. Second, the prosecutor's characterizations in his opening statement and closing argument went beyond the limited scope of intent for the enticement count. His comments increased the likelihood that the jury misconstrued how it could consider the improper evidence because these characterizations implied that the evidence pertained to all three counts. Thus, the unfairly prejudicial nature of the 404(b) evidence permeated all aspects of the trial.

¶ 43 Because all three counts for which Perez was convicted include a similar element regarding sexual conduct, and the prosecutor's statements and arguments repeatedly urged the jury to consider the 404(b) evidence beyond its limited scope and implied that it was relevant to all counts, we cannot conclude that the trial court's limiting instructions cured the court's erroneous admission of the 404(b) evidence. "[T]he jury instruction[s] did nothing to alleviate the potential for prejudice in this case." *Yusem v. People*, 210 P.3d 458, 469 (Colo.2009) (noting that the prior act evidence was irrelevant for its proffered purpose and therefore the court should not have instructed the jury as to this purpose). Rather, the instructions highlighted the evidence to the jury by instructing it to consider the 404(b) evidence to show that Perez intended to sexually assault C.B. for the enticement count. It was unreasonable to expect a jury to consider that evidence for Perez's intent to sexually assault C.B. for the enticement count but not for whether he knowingly subjected her to sexual contact for the count of sexual assault on a child or whether he committed a sexual offense on her for the count of second-degree kidnapping. Therefore, this case's circumstances caused the 404(b) evidence to substantially affect the fairness of the proceedings as to all three counts. We conclude that there is a reasonable probability that, under these circumstances, the admission into evidence of Perez's prior incidents with O.D. contributed to his convictions for sexual assault on a child and second-degree kidnapping. Therefore, the error was not harmless as to the two remaining convictions.

## IV. Conclusion

¶ 44 For the foregoing reasons, we hold that when the trial court abused its discretion in admitting the 404(b) evidence of Perez's prior bad acts for a single count, under the facts of this case the error was not harmless as to the convictions on the two remaining counts. Accordingly, we reverse the court of appeals, vacate Perez's convictions for sexual assault on a child and second-degree kidnapping, and remand to the court of appeals with instructions to return the case to the trial court for further proceedings consistent with this opinion.