23CA1305 Peo v Green 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1305
Douglas County District Court No. 22CR952
Honorable Patricia D. Herron, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Lyne Green,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Schock, J., concurs
Taubman*, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kevin M. Whitfield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Michael Lyne Green, appeals the judgment of conviction entered on jury verdicts finding him guilty of misdemeanor possession of a controlled substance and felony aggravated motor vehicle theft.

¶ 2    We reject the only argument implicating the drug possession conviction and therefore affirm that conviction. But we agree that the trial court erred by admitting extensive CRE 404(b) evidence at Green's trial without conducting the proper analysis, so we reverse the motor vehicle theft conviction and remand for a new trial.

## I.    Background

¶ 3    Green and two other men were in a Kohl's store when Lyndia High, the store's loss prevention supervisor, observed them on the store's surveillance system engaging in behaviors that she thought were consistent with shoplifting. She called the police.

¶ 4    Before the police arrived, High rewound the surveillance video to track the group's path from a car in the parking lot to the store entrance. Using the camera's zoom feature, she saw a man in a blue sweatshirt exit the driver's side of the car and two other men, one in a white sweatshirt and one in a black jacket, get out of the car from the passenger side. Following her review of the

surveillance footage, High gave the police dispatcher a physical description of the men and told the dispatcher that they had arrived in a silver sedan parked in the store's lot.

¶ 5    When the police arrived, they located the silver Kia sedan and ran the car's Florida license plate number. The search revealed no vehicle information associated with that license plate number, so officers ran the vehicle identification number (VIN) and discovered that the Kia was registered in Tennessee and had been reported stolen in Arvada. Based on this information, the officers blocked the Kia with their patrol cars, and one officer searched the car.

¶ 6    The Kia's ignition was damaged. The officer saw a flathead screwdriver in the center console. He also found a key in the console, but the key did not start the Kia. The officer deduced that the driver of the Kia had used the flathead screwdriver to start the car. The officer removed the Florida license plate and discovered the Tennessee license plate matching the Kia's VIN underneath.

¶ 7     While that officer searched the car, other officers entered Kohl's to contact the suspected shoplifters whom High had connected to the stolen Kia.[1]

¶ 8     The man in the blue sweatshirt was identified as Green. Officers searched Green and found a Dodge car key, two glass pipes, and a small white rock, later identified as cocaine, in his pockets. They also reviewed the security footage High had used to connect the three men to the Kia. Green was arrested and charged with aggravated motor vehicle theft and unlawful possession of a controlled substance.

¶ 9     On the first day of trial, defense counsel moved to exclude any evidence that police had been called to Kohl's to investigate suspected shoplifting. Defense counsel contended that the evidence was extrinsic to the charged offenses, constituted impermissible character evidence under CRE 404(b), lacked probative value, and was unduly prejudicial under CRE 403. The prosecutor argued that the evidence of the suspected shoplifting was "important and

---

[1] While police were checking the license plate information on the Kia, one of the three men High had identified as a suspected shoplifter left Kohl's and fled on foot. Police searched the area but were unable to locate or identify him.

relevant . . . to give the jury complete context of the facts in this case" and to explain why police had responded to Kohl's. The trial court denied defense counsel's motion without explanation.

¶ 10 The prosecutor began her opening statement by explaining that High had suspected Green and the other men of shoplifting. High testified about the suspected shoplifting, as did three police officers. The suspected shoplifting conduct was also depicted in several video and photo exhibits. One exhibit, narrated by High during her testimony, was a five-minute video of the inside of Kohl's that showed the three men walking into the store and then engaging in suspected shoplifting.

¶ 11 The prosecution presented its evidence in one day. At the conclusion of the trial, the jury returned guilty verdicts on both charges. The jury also determined, based on the value of the Kia, that the aggravated motor vehicle theft was a class 5 felony. The trial court subsequently found that Green had two prior motor vehicle theft convictions that were separately brought and tried, which elevated the aggravated motor vehicle theft conviction to a class 3 felony. The trial court sentenced Green to six years in prison.

## II.    Analysis

¶ 12    We begin with Green's challenge to the 2022 model criminal jury instruction on reasonable doubt, the only issue on appeal that applies to the drug possession conviction as well as the motor vehicle theft conviction.[2]  Because we reject that challenge, we affirm the drug possession conviction.  From there, we turn to Green's claim concerning the admission of CRE 404(b) evidence.  Because we agree that the court erred in admitting the evidence without conducting the proper analysis or giving a limiting instruction, we reverse the motor vehicle theft conviction and remand for a new trial.  Last, we address the one issue likely to arise on remand.

### A.    Jury Instruction on Reasonable Doubt

¶ 13    Before 2022, the Colorado model criminal jury instructions defined reasonable doubt as follows:

---

[2] Aside from a brief reference in the background section of the forty-five-page opening brief, Green never mentions the drug possession conviction, nor does he present any argument concerning that conviction.  To the extent he intended his other arguments to apply to the drug conviction, he does not explain the connection.  Accordingly, the arguments are too undeveloped to permit review.  *See People v. Stone*, 2021 COA 104, ¶ 52 (explaining that the appellate court will not address undeveloped arguments).

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).

¶ 14    In 2022, the model instruction was substantially revised:

Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty,

> then the prosecution has failed to prove the crime charged beyond a reasonable doubt.
>
> After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.
>
> After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 15    Over Green's objection, the court instructed the jury on reasonable doubt using the 2022 version of the model instruction rather than the prior version.

¶ 16    Green contends that the 2022 instruction impermissibly lowered the prosecution's burden of proof, undercut the presumption of innocence, and shifted the burden of proof to him. We disagree.

### 1.    Legal Principles and Standard of Review

¶ 17    The trial court must properly instruct the jury on the reasonable doubt standard. *Tibbels v. People,* 2022 CO 1, ¶ 25. Whether the court's instruction lowered the prosecution's burden of proof is a question of law that we review de novo. *Id.* at ¶ 22. "An

7

instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8.

## 2. Application

¶ 18 While Green's appeal was pending, three divisions of this court considered similar challenges to the 2022 model reasonable doubt instruction. *See People v. Melara*, 2025 COA 48, ¶¶ 22-23; *People v. Schlehuber*, 2025 COA 50, ¶¶ 16-17; *People v. Berumen*, 2025 COA 93, ¶ 14. In all three cases, the majority opinions concluded that the 2022 instruction did not lower the prosecution's burden of proof below the reasonable doubt standard. *Melara*, ¶ 24; *Schlehuber*, ¶ 20; *Berumen*, ¶ 21. We agree with those majority opinions and adopt their reasoning to resolve Green's arguments.

¶ 19 First, the 2022 model instruction's omission of the specific language directing the jury that it may consider "the lack of evidence" does not lower the prosecution's burden of proof because the instruction as a whole informs the jury that "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Schlehuber*, ¶ 22; *see also Melara*, ¶ 24; *Berumen*, ¶ 33.

8

¶ 20    Next, though the "hesitate to act" phrase was previously approved by Colorado courts, Green does not explain why the deletion of that phrase lowers the prosecution's burden of proof. Moreover, we reject Green's contention that "the jury was left without anything tangible to understand the concept of 'reasonable doubt'" by the omission of this phrase, as the instruction as a whole renders the concept sufficiently concrete. We agree with the *Schlehuber* division that omission of the phrase clarifies the reasonable doubt standard by discouraging courts from using analogies to explain it. *See Schlehuber*, ¶ 27.

¶ 21    Finally, defining proof beyond a reasonable doubt as proof that leaves jurors "firmly convinced" of the defendant's guilt and reasonable doubt as "a real possibility that the defendant is not guilty" does not lower the prosecution's burden of proof. COLJI-Crim. E:03 (2022). "The phrase 'firmly convinced' correctly connotes a standard of 'near certitude,'" *Schlehuber*, ¶ 31 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)), while the phrase "real possibility" correctly requires the prosecution to dispel any legitimate possibility the defendant is not guilty, "not just a serious or substantial one," *id.* at ¶ 32. And like the *Berumen* majority, we

9

disagree that the use of the phrase "real possibility" "warrants reversal because courts in other jurisdictions have criticized or rejected similar language." *Berumen*, ¶ 23.

¶ 22    We acknowledge that Judge Berger's partial dissent in *Berumen* raises legitimate concerns about the use of the "real possibility" language but, ultimately, we agree with the *Berumen* majority that the use of that phrase, when considered in context and as a part of the instructions as a whole, does not shift the prosecution's burden. *Id.* at ¶¶ 26-30; *see id.* at ¶¶ 60-79 (Berger, J., concurring in part and dissenting in part). And we echo Judge Berger's observation that, should they share his concerns about the revised model instruction, trial courts retain discretion to use the well-tested 2021 model instruction while the revised model instruction is under review by our supreme court.[3] *Id.* at ¶ 78 & n.5 (Berger, J., concurring in part and dissenting in part).

---

[3] The Colorado Supreme Court has granted certiorari in *Teran-Sanchez v. People*, (Colo. No. 25SC148, Sep. 2, 2025) (unpublished order), to address whether the definition of reasonable doubt in the revised model instruction violates a defendant's rights to due process and a fair trial.

¶ 23     Considering the reasonable doubt instruction as a whole, we perceive no cumulative error because there is not a reasonable likelihood that the instruction would "allow a conviction based on a standard lower than beyond a reasonable doubt." *Schlehuber*, ¶ 35 (quoting *Tibbels*, ¶ 36).

¶ 24     Accordingly, we discern no error in the court's decision to give the 2022 model instruction. Because Green's challenge to the 2022 model instruction is the only claim of error related to his misdemeanor drug conviction, and the trial court did not err by giving that instruction to the jury, we affirm the misdemeanor conviction.

##### B.     Admission of Suspected Shoplifting Evidence

¶ 25     Green contends that the trial court erred by admitting evidence of the suspected shoplifting without conducting the required CRE 404(b) analysis or issuing a limiting instruction. We agree.

###### 1.     Legal Principles and Standard of Review

¶ 26     Admission of uncharged misconduct evidence — often referred to as "other acts evidence" — is restricted under the rules of evidence because of its potential to unfairly prejudice a defendant.

*Perez v. People*, 2015 CO 45, ¶ 24. CRE 404(b)(1) prohibits the admission of such evidence if offered to prove a person's character and to show that the person acted in conformity with a character trait on a particular occasion — often described as "a propensity to commit the charged offense." *Rojas v. People*, 2022 CO 8, ¶ 52.

¶ 27 Nonetheless, under the now-defunct res gestae doctrine, courts would frequently admit evidence of the defendant's prior misconduct related to the charge on trial to "provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Skufca,* 176 P.3d 83, 86 (Colo. 2008) (citation omitted), *abrogated in part by*, *Rojas*, ¶ 33. But because res gestae became a convenient way to "'short-circuit[] the evaluation called for in Rule 404(b)' analysis," *Rojas*, ¶ 37 (citation omitted), permitting the introduction of otherwise inadmissible character evidence, the supreme court abolished the res gestae doctrine and adopted a new framework for determining when CRE 404(b) governs the admission of other acts evidence, *id.* at ¶¶ 3-4, 41, 43.

¶ 28 To determine whether CRE 404(b) is triggered, a court must first assess if the evidence is intrinsic or extrinsic to the charged

12

offense.  *Id.* at ¶ 52.  "Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it."  *Id.* "Evidence of acts that are intrinsic to the charged offense are exempt from Rule 404(b) because they are not 'other' crimes, wrongs, or acts."  *Id.*

¶ 29    If the evidence is not intrinsic, then it is extrinsic.  *Id.* at ¶ 44. And if the extrinsic evidence suggests bad character, it is admissible only if it satisfies the test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  *Rojas*, ¶ 52.  Under this test, a trial court must find that the evidence (1) "relates to a material fact"; (2) is "logically relevant"; (3) has such relevance "independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character" and acted in conformity therewith; and (4) satisfies CRE 403 by having probative value that is not "substantially outweighed by the danger of unfair prejudice."  *Spoto*, 795 P.2d at 1318.  If a trial court determines that the evidence is admissible under CRE 404(b), "the court must also, upon request, contemporaneously instruct the jurors of the limited purpose for which the evidence may be considered."  *Rojas*, ¶ 27.

¶ 30　　Trial courts have substantial discretion in deciding whether to admit other acts evidence. *Perez*, ¶ 22. We review the trial court's ruling for an abuse of discretion, and we will not disturb the decision unless it was manifestly arbitrary, unreasonable, or unfair. *Id.* Because Green preserved his claim, if we conclude that the court abused its discretion, we must reverse his conviction unless the error was harmless, meaning "there is no reasonable probability, or possibility, that it contributed to the defendant's conviction." *People v. Roman*, 2017 CO 70, ¶ 13 (footnote omitted) (citing *Crider v. People*, 186 P.3d 39, 42-43 (Colo. 2008)).

## 2.　Application

¶ 31　　Green argues that the evidence that he was suspected of shoplifting was extrinsic to the charged crimes, and therefore, the trial court erred by admitting the evidence without conducting a *Spoto* analysis or issuing a limiting instruction. The People contend that the evidence was either intrinsic and admissible under CRE 401 and 403, or it was extrinsic but nonetheless admissible under *Spoto*, and, regardless, any error in admitting the evidence was harmless. We agree with Green.

14

¶ 32     At trial, the prosecutor argued that because the shoplifting evidence "provide[d] complete context" for the jury, CRE 404(b) did not apply.  To the extent the court adopted that position, it erred.  *See Rojas*, ¶ 38 ("The 'completing the story' rationale to admit other-acts evidence 'create[s] the greatest risk of subverting the limitations that ought to apply whenever the jury is informed of a person's uncharged wrongdoing.'" (quoting David P. Leonard, *New Wigmore on Evidence: Evidence of Other Misconduct* § 5.3.2 (2d ed. Supp. 2020))).  However, because the trial court denied Green's motion without explanation, we do not know the basis of its decision.  In other words, it might have concluded that, for some other reason, the evidence was not subject to CRE 404(b).  Therefore, we turn to that issue.

¶ 33     As required by *Rojas*, we first consider whether the evidence of suspected shoplifting is intrinsic or extrinsic to the charged offense of aggravated motor vehicle theft.  *Id.* at ¶ 52.

¶ 34     The People argue that the evidence is intrinsic to the charged offense, on the theory that Green's "intent to shoplift at Kohl's facilitated [aggravated motor vehicle theft] because shoplifting

motivated him to get in the car and drive it to Kohl's." We reject that argument.

¶ 35    To "facilitate" means to "make the commission of (a crime) easier." Black's Law Dictionary 732 (12th ed. 2024). Green's suspected shoplifting did not make the alleged theft of the Kia easier. Indeed, the suspected shoplifting occurred *after* the alleged theft of the Kia was completed, which also demonstrates the two acts were not contemporaneous. Perhaps, under different circumstances, the inverse argument could be made — that the alleged theft of the Kia facilitated the shoplifting. But under these circumstances, the suspected shoplifting could not have facilitated the earlier theft of a car.

¶ 36    We therefore conclude that the shoplifting evidence was extrinsic to the charged offense. And because the shoplifting evidence suggested Green had bad character and a propensity to steal (i.e., to commit the charged crime of aggravated motor vehicle theft), CRE 404(b) governed the admission of the evidence.

¶ 37    The trial court, however, did not conduct the required *Spoto* analysis before admitting the suspected shoplifting evidence. The

16

failure to conduct the analysis amounts to an abuse of discretion. *Rojas*, ¶ 54.

¶ 38   The People invite us to perform the required *Spoto* analysis for the first time on appeal, but we decline that invitation. For one thing, that is not the approach the supreme court took in *Rojas*. *See id.* at ¶¶ 54-55 (proceeding directly to a harmlessness analysis after concluding that the trial court abused its discretion by failing to conduct a *Spoto* analysis). But more importantly, the sheer volume and disparateness of the admitted CRE 404(b) evidence complicates the endeavor. It is possible that some evidence of Green's suspected shoplifting activity is admissible for a non-propensity purpose, but the trial court must sift through the proffered evidence and weigh its probative value against the prejudicial effect, particularly in the aggregate. And if such evidence is admitted, it must be admitted with the "accompanying procedural safeguards" required by CRE 404(b). *Id.* at ¶ 54.

¶ 39   What we can say with no trouble is that the court's error in admitting all of the shoplifting evidence was not harmless. The issue at trial was whether Green had stolen the Kia. His defense was identity — he claimed that he was not the driver and had not

knowingly obtained or exercised control over the car. *See* § 18-4-409(2), C.R.S. 2022.

¶ 40　　Notwithstanding the elements of the charged offense and Green's defense, the court admitted extensive evidence that Green was potentially stealing from a store on the night he was arrested for stealing a car. Of the seven witnesses who testified, four mentioned the suspected shoplifting conduct. The prosecution's first witness narrated a five-minute video that showed nothing more than Green and two others engaging in conduct consistent with shoplifting. Three police officers mentioned that they were dispatched to the store based on a report that three men were "going to conduct a run-out" from the store. All of this evidence was presented during what was effectively a one-day trial. *Cf. Howard-Walker v. People*, 2019 CO 69, ¶ 40 (where "entire trial itself lasted less than nine hours (excluding voir dire and jury deliberations)," the impact of the errors was "compound[ed]").

¶ 41　　And even if, as we have noted, some of this evidence might have been admissible under CRE 404(b), "the absence of a limiting instruction permitted the jury to misuse the evidence." *Rojas*, ¶ 56. The People contend that a limiting instruction was unnecessary

because Green failed to request one. But in this case, the court apparently agreed with the prosecution that CRE 404(b) did not apply and admitted the evidence without conducting the proper analysis. Under the circumstances, Green did not have a basis to request a CRE 404(b) limiting instruction. *See Rojas*, ¶ 27 (explaining that if a court finds evidence admissible under CRE 404(b), then it must consider any request for a limiting instruction).

¶ 42 We likewise disagree with the People's position that any error was harmless given the overwhelming evidence of guilt. The evidence the People rely on is evidence that the Kia was stolen — the license plate and VIN search revealed that the Kia was reported stolen, the ignition was "punched," a flathead screwdriver (apparently used to start the car) was located in the center console, the key in the center console did not start the car, and the Florida license plate displayed on the Kia was covering the registered Tennessee plate. But the fact that the Kia was stolen was not seriously in dispute. And none of that evidence connects the stolen Kia to Green.

¶ 43 The only evidence connecting Green to the Kia was the Kohl's surveillance footage, taken together with High's and the testifying

officers' interpretation of that footage. By their accounts, the footage was grainy, taken from a distance, included rows of cars surrounding the Kia, and featured a tree obstructing the view of the Kia's windshield, blocking the view of anything or anyone inside the car. Indeed, Green's theory of defense focused on the inadequacies of the video evidence, including that the footage did not show the Kia arriving to the parking lot and that the footage was nearly indecipherable because of poor picture quality.

¶ 44 True, High and the officers testified that, using a special feature only available in the loss prevention office, they viewed a magnified version of the footage that showed Green emerge from the driver's side of the Kia. The jury could have credited those witnesses' out-of-court perceptions. But if it did not, then it had to rely on the less sophisticated, lower-quality version of the footage admitted at trial, and the jury might not have found that version particularly elucidating. Given those options available to the jury and the absence of any other evidence connecting Green to the Kia, we cannot say that the evidence that Green stole the car was overwhelming.

¶ 45    Rather, we think there is a reasonable possibility that admitting the extensive shoplifting evidence, "without any [CRE] 404(b) safeguards, affected the fairness of the trial by allowing the jury to convict [Green] based on implied propensity" — he is a thief who steals from stores; therefore, he likely stole the car. *Id.* at ¶ 56; *see Roman*, ¶ 13. In other words, we conclude that the erroneously admitted evidence might well have "tipped the scales" in favor of the prosecution. *Yusem v. People*, 210 P.3d 458, 470 (Colo. 2009); *see also People v. Jefferson*, 2014 COA 77M, ¶¶ 27-30 (trial court's evidentiary error was not harmless where alleged victim's credibility was main issue at trial, evidence of guilt was not overwhelming, and prosecution emphasized the evidence during trial), *aff'd*, 2017 CO 35. Accordingly, we conclude that the trial court's error was not harmless.

## C. "Punched" Ignition Testimony

¶ 46    Because the issue is likely to arise on remand,[4] we briefly address Green's contention that an officer's testimony about "punched" ignitions amounted to improper expert testimony.

¶ 47    "Under CRE 701, lay witness opinion testimony must be (1) rationally based on the witness' perception; (2) 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue'; and (3) 'not based on scientific, technical, or other specialized knowledge within the scope of [CRE] 702.'" *People v. Williams*, 2025 COA 26, ¶ 30 (quoting CRE 701). Whether an opinion is lay testimony under CRE 701 or expert testimony under CRE 702 depends on the basis for the opinion. *Venalonzo v. People*, 2017 CO 9, ¶ 23.

---

[4] We do not address Green's remaining claims, as they are unlikely to arise on remand in the same posture. For example, the Supreme Court's intervening decision in *Erlinger v. United States*, 602 U.S. 821, 835 (2024), resolves Green's challenge to the enhancement of his conviction from a class 5 felony to a class 3 felony. It is now clear that the jury must determine on remand whether Green's prior convictions were "separately brought and tried." § 18-4-409(3)(b), C.R.S. 2022; *see also People v. Gregg*, 2025 CO 57, ¶ 24 ("[T]he question of separate and distinct criminal episodes demands a jury finding . . . .").

¶ 48 "Police officers' testimony may sometimes walk a fine line between lay and expert testimony." *Williams*, ¶ 31 (citing *People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002)). "[I]f an ordinary person could form the officer's opinion using 'a process of reasoning familiar in everyday life, it is admissible as lay opinion evidence.'" *Id.* (quoting *People in Interest of D.I.*, 2015 COA 136, ¶ 29). "If, on the other hand, the [officer] provides testimony that could not be offered without specialized experiences, knowledge, or training, then the [officer] is offering expert testimony." *Venalonzo*, ¶ 16.

¶ 49 Green argues that the officer gave expert testimony about punched ignitions in the guise of lay testimony. Some of the officer's testimony — including his observations about the ignition appearing damaged and the presence of the screwdriver in the Kia — was proper because it was based on his "perceptions and experiences." *People v. Rincon*, 140 P.3d 976, 982 (Colo. App. 2005) (citation omitted). However, we caution that, on remand, the trial court must carefully assess the basis of the officer's opinion that the Kia's ignition was "punched" and that the screwdriver was used to operate the Kia before admitting such testimony as lay testimony. *See Stewart*, 55 P.3d at 124 (police officer with specialized training

23

may testify as a lay witness to observations and investigation at the crime scene but may not testify about deductions regarding a car's speed, direction, and trajectory without being qualified as an expert witness).

¶ 50    At trial, the officer testified that his knowledge of punched ignitions and his ability to identify a punched ignition were gained through his training and experience as a police officer, which is a "hallmark" of expert testimony. *People v. Ramos*, 2012 COA 191, ¶ 18, *aff'd*, 2017 CO 6; *see People v. Dominguez*, 2019 COA 78, ¶ 42 (where officer's opinion was expressly based on his training and experience, it constituted an expert opinion).  And we note that the owner of the car was unfamiliar with the term "punched ignition."

¶ 51    Therefore, if the issue arises on remand, the trial court should parse the officer's opinions to ensure that his testimony does not cross the line into expert territory.

## III.   Disposition

¶ 52    The judgment of conviction for unlawful possession of a controlled substance is affirmed.  The judgment of conviction for aggravated motor vehicle theft is reversed, and the case is remanded for a new trial on that charge.

JUDGE SCHOCK concurs.

JUDGE TAUBMAN concurs in part and dissents in part.

JUDGE TAUBMAN, concurring in part and dissenting in part.

¶ 53    I agree with the majority's reversal of the aggravated motor vehicle theft conviction of defendant, Michael Lyne Green. However, I dissent in part because I would reverse his drug possession conviction and remand that charge for a new trial using a different reasonable doubt instruction.

¶ 54    As the majority notes, the validity of the supreme court's 2022 model criminal jury instruction on reasonable doubt has been challenged in several cases, including one in which the supreme court has granted certiorari. *See supra* ¶¶ 18, 22 n.3 (citing *Teran-Sanchez v. People*, (Colo. No. 258SC148, Sep. 2, 2025) (unpublished order)).

¶ 55    I write separately because I agree with Judge Berger's persuasive dissent in *People v. Berumen*, 2025 COA 93, ¶¶ 60-79, ___ P.3d ___ , ___ (Berger, J., concurring in part and dissenting in part), that the third paragraph of the 2022 model jury instruction on reasonable doubt impermissibly lowers the prosecution's burden of proof. That paragraph, in pertinent part, states, "[I]f you think there is a real possibility that the defendant is not guilty, then the

26

prosecution has failed to prove the crime charged beyond a reasonable doubt." COLJI-Crim. E:03 (2022).

¶ 56    While the majority correctly notes that Judge Berger's partial dissent raises legitimate concerns and emphasizes that trial judges are not required to use the 2022 model instruction, the trial court did so here over Green's objection. *See supra* ¶¶ 15, 22. Thus, the possibility that a trial court may not use the 2022 model instruction does not resolve the issue of its actual use here.

¶ 57    I agree with the majority's rejection of Green's other challenges to the 2022 model instruction, but I believe that the use of the "real possibility" language in that instruction is problematic. Instead of providing clarity to jurors regarding the meaning of "reasonable doubt," this language creates ambiguity. That ambiguity is clearly illustrated in this case by the prosecutor's closing argument explaining at length the meaning of "real possibility" without emphasizing the prosecution's burden of proof to establish guilt beyond a reasonable doubt.

¶ 58    I believe that the 2022 model instruction was motivated by the supreme court's rejection of a hypothetical used by a trial judge in *Tibbels v. People*, 2022 CO 1, ¶¶ 49-53, 501 P.3d 792, 801-02, to

27

explain the "hesitate to act" language in the previous model instruction. Nevertheless, removal of the "real possibility" language from the 2022 model jury instruction would simplify and clarify for jurors the meaning of "proof beyond a reasonable doubt."

¶ 59 Accordingly, I concur in part and dissent in part and urge the supreme court to delete the "real possibility" language from the 2022 model instruction.